1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  PETER D. HALLORAN, State Bar No. 184025
   Supervising Deputy Attorney General
3  CONNIE A. BROUSSARD, State Bar No. 228237
   Supervising Deputy Attorney General
4   2550 Mariposa Mall, Room 5090
    Fresno, CA  93721
5   Telephone:  (559) 477-1676
    Fax:  (559) 445-5106
6   E-mail:  Connie.Broussard@doj.ca.gov
   *Attorneys for Defendant California Commission on*
7  *Peace Officer Standards & Training*

8

9                IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12 **TAMARA EVANS,**                    Case No.

13                      Plaintiff,      **NOTICE OF REMOVAL OF ACTION
                                        UNDER 28 U.S.C. § 1441(a)**
14          **v.**
                                        **(FEDERAL QUESTION)**
15
   **CALIFORNIA COMMISSION ON PEACE**   **Superior Court of California, County of**
16 **OFFICERS STANDARDS AND**           **Sacramento, Case No. 34-2014-00164423**
   **TRAINING; EDMUND PECINOVSKY;**
17 **ANNE BREWER and DOES 1-25,**

18                      Defendants.

19

20       **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL PARTIES:**

21       **PLEASE TAKE NOTICE** that Defendant California Commission on Peace Officers

22 Standards and Training ("Defendant"), hereby removes to this Court the state court action

23 described below.

24       1.   On June 4, 2015, an action was commenced in the Superior Court of the State of

25 California in and for the County of Sacramento ("State Court") entitled *Tamara Evans vs.*

26 *California Commission on Peace Officers Standards and Training, Edmund Pechinovsky and*

27 *Anne Brewer, and Does 1 through 50, inclusive* (the "Complaint").

28

                                         1

1    2.    A First Amended Complaint was filed on August 10, 2015. A copy of the First

2    Amended Complaint, Summons, and Notice of Case Management Conference are attached hereto

3    as Exhibit A.

4    2.    The First Amended Complaint was served on defendant California Commission on

5    Peace Officers Standards and Training on August 17, 2015. Defendants Edmund Pechinovsky

6    and Anne Brewer have not been served.

7    3.    This action is a civil action of which this Court has original jurisdiction under 28

8    U.S.C. § 1331, and is one which may be removed to this Court by defendants pursuant to the

9    provisions of 28 U.S.C. § 1441(a) in that it arises under federal law, including 31 U.S.C. § 3730

10   (h), 42 U.S.C. § 1983, and 29 U.S.C. § 2617 (a).  Plaintiff's First Amended Complaint alleges

11   whistleblower retaliation, wrongful termination and violations of the Family Medical Leave Act.

12   4.    No other defendants have been served with summons and complaint.

13   5.    Defendant has not yet filed a responsive pleading in state court.  Simultaneous with

14   this Notice of Removal, Defendant will file a Notice of Filing Notice of Removal in the state

15   court in order to notify the state court clerk and Plaintiff regarding the removal of this action to

16   federal court.

17   Dated:  September 15, 2015                    Respectfully submitted,

18                                                KAMALA D. HARRIS
                                                  Attorney General of California
19                                                PETER D. HALLORAN
                                                  Supervising Deputy Attorney General
20

21                                                /s/ Connie A. Broussard

22

23                                                CONNIE A. BROUSSARD
                                                  Deputy Attorney General
24                                                Attorneys for Defendant California
                                                  Commission on Peace Officer Standards &
25                                                Training

26   SA2015104874
     95153718.doc

27

28

2

# EXHIBIT  A

FILED/ENDORSED

AUG 1 0 2015

By: _____Erica Medina_____
DEPUTY CLERK

1   BROWN | POORE LLP
    Scott A. Brown (SBN 177099)
2   David M. Poore (SBN 192541)
    1350 Treat Boulevard, Suite 420
3   Walnut Creek, California 94597
    Telephone: (925) 943-1166
4   Facsimile: (925) 955-8600
    sbrown@bplegalgroup.com
5

6   Attorneys for Plaintiff TAMARA EVANS

7
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
                        COUNTY OF SACRAMENTO
9

10
    TAMARA EVANS,                           )   Case No. 34-2014-00164423
11                                          )
                                            )
12              Plaintiff,                  )   FIRST AMENDED COMPLAINT
                                            )
13        v.                                )   VIOLATION OF CAL. LABOR CODE
                                            )   §1102.5 ("WHISTLEBLOWER
14                                          )   STATUTE");
                                            )   VIOLATION OF 31 U.S.C. §3730(h);
15  CALIFORNIA COMMISSION ON PEACE          )   VIOLATION OF CAL. GOV'T CODE
    OFFICERS STANDARDS AND TRAINING;        )   §12653;
16  EDMUND PECINOVSKY; ANNE BREWER          )   VIOLATION OF CAL. GOV'T CODE
    and DOES 1-25,                          )   §8547.8;
17                                          )   VIOLATION OF 42 U.S.C. §1983;
                Defendants.                 )   VIOLATION OF 29 U.S.C. §2617(a)
18                                          )   (FAMILY MEDICAL LEAVE ACT);
                                            )   VIOLATION OF CAL. GOVT. CODE
19                                          )   §12945.1
                                            )   (CALIFORNIA RIGHTS FAMILY ACT)
20                                          )
                                            )
21                                          )
                                            )
22                                          )   JURY TRIAL DEMANDED
23  _____)

24                                              BY FAX

25

26

27

28

1    Plaintiff Tamara Evans complains and alleges as follows:

2                              **INTRODUCTION**

3        1.    This is a case alleging whistleblower retaliation and civil rights claims related to

4    Plaintiff's wrongful termination by Defendant California Commission on Peace Officer Standards

5    and Training ("CCPOST"), as well as violations of the Family Medical Leave Act. Plaintiff seeks

6    back pay and front pay, along with interest, compensatory damages for emotional distress arising

7    from CCPOST's treatment of her, attorneys' fees and costs, penalties, treble damages, and all

8    other relief, including declaratory and injunctive relief, available under the law.

9        2.    Plaintiff's claims stem from a clear sequence of events culminating in her unlawful

10   termination. Plaintiff learned of unlawful conduct by CCPOST and some of its contractors,

11   reported the conduct to the California Emergency Management Agency (CalEMA) and informed

12   her superiors of her communications with the state authorities. One of Plaintiff's larger

13   assignments was overseeing Federal funding for law enforcement training courses with the San

14   Diego Regional Training Center (SDRTC). Plaintiff informed Defendants that there were serious

15   problems with SDRTC's management of the grant funded contract and that SDRTC had claimed

16   reimbursements for expenses which could not be justified or proven.

17       3.    Defendants proceeded to retaliate against her for making these reports by transferring

18   her assignments, demoting her, providing an unfavorable performance evaluation, denying her

19   rights under the Family Medical Leave Act, ultimately terminating her employment as a Law

20   Enforcement Consultant II, and other adverse employment actions.

21       4.    During her employment with CCPOST, Plaintiff was a successful Law Enforcement

22   Consultant II. She managed grant-funded contracts, reviewed and approved invoices submitted

23   for payment by contractors to CCPOST and participated in audits of CCPOST's expenditures.

24   Her performance reviews were excellent, her work ethic was lauded, and she received

25   commendations. Prior to her employment with CCPOST, Plaintiff served as the Chief of Police

26   for the Washoe County School Police Department in Reno, Nevada.

27       5.    The purported basis for Plaintiff's termination was an obvious pretext for Plaintiff

28

FIRST AMENDED COMPLAINT FOR DAMAGES          1          Case No. 34-2014-00164423

1  Evans' whistleblowing activities, and was false and injured her personal, business, and

2  professional reputation.

3  **PARTIES**

4  6.  Plaintiff Tamara Evans is an individual over the age of 18 and, at all relevant times

5  was an employee of CCPOST from June 2004 through March 29, 2013.

6  7.  Plaintiff is informed and believes, and on that basis alleges, Defendant CCPOST is

7  and at all times mentioned herein an entity of the State of California with its principal place of

8  business in Sacramento, California.  Plaintiff is informed and believes, and on that basis alleges,

9  that CCPOST, was authorized to operate and do business in the State of California and its

10  headquarters, located at 1601 Alhambra Boulevard, Sacramento, California 95816.  CCPOST is,

11  and at all relevant times hereto, has been an employer within the State of California, who

12  regularly employed more than five persons, including Plaintiff.

13  8.  Plaintiff does not know the true names and capacities of Defendants sued herein as

14  DOES 1 through 25, and therefore sues these Defendants by fictitious names.  Plaintiff is

15  informed and believes and thereon alleges that each of the Defendants designated as a DOE is

16  responsible in some manner for the events and happenings herein referred to, and that Plaintiff's

17  injuries and damages as set forth were proximately caused by said defendants. Plaintiff will

18  amend this complaint to state the true names and capacities when ascertained.

19  9.  Plaintiff is informed and believes, and thereby alleges that each of the Defendants,

20  herein were at all times relevant hereto, the agents, representatives, servants and employees of the

21  remaining Defendants, and were acting at least in part within the course and scope of such

22  relationship, and that the wrongful acts alleged herein were committed by such Defendants, and

23  each of them.  Further, Plaintiff is informed and believes that Defendants were, at all relevant

24  times, one integrated enterprise and/or employer.

25  **JURISDICTION AND VENUE**

26  10.  This Court has jurisdiction over this controversy because CCPOST employed

27  Plaintiff in California and regularly conducts business in California, the claims asserted by

28

1    Plaintiff are governed by the laws of the State of California, and the injuries resulting from

2    Defendants' wrongful conduct were suffered in California.

3        11.  Venue is appropriate in this County because CCPOST is headquartered in

4    Sacramento, Plaintiff's supervisors were headquartered in Sacramento, and CCPOST's unlawful

5    conduct was directed from, and carried out in, its offices in Sacramento.

6                          **FACTUAL BACKGROUND**

7        12.  Plaintiff is informed and believes, and on that basis alleges, Defendant CCPOST was

8    established in 1959 and tasked with the responsibility to set the minimum selection and training

9    standards for California law enforcement.

10       13.  From June 2004 and continuing through March 29, 2013, Plaintiff was employed as a

11   Law Enforcement Consultant II with CCPOST.  Her duties required her to, among other things,

12   manage grant-funded contracts, review and approve invoices submitted for payment by

13   contractors to CCPOST and participate in audits of CCPOST's expenditures.  In addition,

14   Plaintiff was charged with risk management, which required her to ensure that corrective action

15   was taken, if necessary, to ensure compliance with all relevant federal and state laws and

16   regulations, and to ensure that CCPOST and its contractors operated with the highest degree of

17   safety, financial, and social responsibility.

18       14.  One of Plaintiff's assignments was to manage and oversee the federal grants received

19   by CCPOST, including but not limited to overseeing federal funding received via the California

20   Emergency Management Agency (CalEMA) for law enforcement training courses.  CCPOST

21   received these sub-awarded grant funds from CalEMA, who was a direct recipient of funds from

22   the federal government.

23       15.  On information and belief, from 1997 until March 29, 2013, CCPOST has accepted

24   Federal Violence Against Women Act (VAWA) grants in order to present training to law

25   enforcement personnel.  Since the initial funding, CCPOST has contracted with the San Diego

26   Regional Training Center (SDRTC) to facilitate course presentations.  In February 2010, Plaintiff

27   received notice that CalEMA planned to perform a monitoring visit in March 2010 and review

28

---

FIRST AMENDED COMPLAINT FOR DAMAGES          3          Case No. 34-2014-00164423

1  CCPOST's expenditures of the VAWA grant funds. Prior to its arrival, CalEMA sent a list of
2  required documentation that CCPOST was required to produce for the visit.

3         16. Plaintiff attempted to compile the necessary documentation for CalEMA's visit.
4  However, CCPOST's files contained no supporting documentation by SDRTC to account for such
5  expenditures. In February 2010, Plaintiff contacted (former) SDRTC director, Michele
6  Thompson, and requested receipts, invoices, or any other supporting documentation to justify
7  SDRTC's claims for reimbursement.

8         17. Thompson refused to supply the necessary supporting documents and demanded a
9  meeting with Plaintiff's supervisor, Edmund Pecinovsky. In or about February/ March 2010,
10  Thompson and SDRTC staff met with Plaintiff and Pecinovsky at CCPOST's headquarters.
11  Plaintiff explained to Thompson the reasons that CalEMA requested the necessary paperwork.
12  However, Thompson again refused to provide the requested information. Pecinovsky stated that
13  SDRTC could re-create documents or, if necessary, make entirely new documents to satisfy the
14  CalEMA auditors.

15         18. After the meeting, Plaintiff informed Pecinovsky that there were serious problems
16  with SDRTC's management of the grant-funded contract. Plaintiff informed him that it appeared
17  that SDRTC had claimed reimbursement for expenses which could not be justified or proven and
18  that such conduct was in violation of statutes and regulations, including but not limited to
19  Government Code section 12650 et. seq., the California Budget Manual, and the California
20  Administrative Manual. Pecinovsky directed Plaintiff to continue to prepare for the monitoring
21  visit and that he would talk to Thompson regarding the documents.

22         19. On or about March 16, 2010, CalEMA's auditors arrived to review CCPOST's
23  expenditures of grant funds. Plaintiff informed the auditors that SDRTC had failed to produce the
24  necessary documentation for the requested reimbursement claims. Plaintiff further informed the
25  auditors that it did not appear that SDRTC could justify their claimed expenses. Pecinovsky
26  entered the meeting, belittled and discounted Plaintiff's presentation, and attempted to downplay
27  the problem.

28

1    20.  The auditors informed Plaintiff and Pecinovsky that reimbursement for SDRTC's

2    claimed expenses would be disallowed if CCPOST could not produce supporting documents.

3    Further, the auditors stated that the disallowed expenses would be reported as an adverse finding

4    in their compliance review report of the monitoring visit.

5    21.  Pecinovsky never provided Plaintiff with any documentation of SDRTC's claimed

6    expenses.  When asked what was being done about SDRTC's invoices, Pecinovsky informed

7    Plaintiff that he would "take care of it."  Plaintiff repeatedly told Pecinovsky that CCPOST

8    should not contract with SDRTC because the problems identified in the auditors' review

9    constituted a violation of the regulations set forth in the Budget and Administrative regulations

10    for payment of invoices to outside contractors and vendors.

11    22.  In the following months, Plaintiff reviewed other SDRTC invoices submitted to

12    CCPOST for payment, which contained items such as payments for instructors, hotel costs, and

13    supplies for students and equipment.  During such reviews, she found that most of SDRTC's

14    invoices for claimed expenses were not supported with documentation to justify their claims.

15    23.  On or about May 24, 2010, CalEMA's auditors issued a compliance review report of

16    the monitoring review.  The report found that CCPOST had improperly sought reimbursement for

17    "budget-based", or projected, costs instead of actual costs as required by the regulations.  This

18    finding resulted from information that Plaintiff provided to the evaluators regarding SDRTC's

19    failure to produce support for their invoices.

20    24.  At or about the same time, Plaintiff informed Pecinovsky that she no longer felt

21    comfortable approving SDRTC'S invoices for payment because SDRTC could not properly

22    support the claimed expenses and that she believed some of SDRTC's claimed expenses were

23    false or inflated.  Pecinovsky became visibly agitated and directed Plaintiff to approve SDRTC's

24    invoices, despite Plaintiff's objections.

25    25.  Several times during May and June 2010, Plaintiff denied SDTRC's requests for

26    reimbursements that Plaintiff believed to be improper.  Each time, SDTRC contacted Pecinovsky,

27    who overruled Plaintiff's decisions.

28

1       26.  On or about June 22, 2010, Plaintiff was directed to meet with Pecinovsky where he

2   informed Plaintiff that there seemed to be some "conflicts" between herself and SDRTC staff.

3   Pecinovsky proceeded to transfer the San Diego contracts project to Plaintiff's co-worker, Anne

4   Brewer.  Brewer's husband worked for SDRTC.

5       27.  After the June 22, 2010 meeting, Plaintiff was temporarily away from her job while

6   recuperating from a serious medical condition, knee surgery.

7       **28.**  After Plaintiff's knee surgery, she obtained a work release from her physician.

8   CCPOST failed to notify her of eligibility for FMLA.  She had previously notified Pecinovsky

9   that her surgery and recuperation would occur in Reno, Nevada.  Pecinovsky directed her to work

10  offsite and caused her electronic work schedule to indicate that she was working offsite for

11  CCPOST in Reno during June, July, August, and September of 2010.  Pecinovsky indicated in his

12  time sheets for this period that Plaintiff was still working for CCPOST.

13      29.  In September 2010, Plaintiff returned to work in CCPOST's Sacramento office.

14  Pecinovsky, acting under authority of CCPOST, reassigned her to a position requiring lesser skills

15  and different work hours in violation of the FMLA.  Specifically, Pecinovsky notified Plaintiff

16  that her responsibilities for overseeing $7,000,000 in contracts for peace officer training

17  throughout California had been reassigned to Anne Brewer.  Pecinovsky then assigned Plaintiff to

18  perform minimal tasks with lower responsibility such as reviewing legislative mandates to

19  determine whether any new laws had passed pertaining to peace officer training.

20      30.  From September 2010 through December 2011, Pecinovsky displayed a hostile,

21  surely demeanor toward Plaintiff and frequently refused to speak to Plaintiff or acknowledge

22  Plaintiff's presence in the workplace.  On at least two occasions, Pecinovsky burst into Plaintiff's

23  office and began screaming at her to complete various tasks.  When Plaintiff asked him to please

24  lower his voice, Pecinovsky shouted, "I am your supervisor, I can speak to you any way I want."

25      31.  In January 2011, Pecinovsky provided Plaintiff with a copy of his 2010 annual

26  performance evaluation of Plaintiff's work performance.  The 2010 evaluation ratings were

27  significantly lower than in prior years.  The evaluation contained several negative comments,

28  including some about Plaintiff's interaction with SDRTC regarding its suspect invoices.

1  Pecinovsky refused to provide specific details about any of these events, such as when Plaintiff

2  had been allegedly "slow in responding to phone calls and emails." Other erroneous comments

3  included a false allegation of Plaintiff's "late" arrival for a meeting, and an exaggerated claim that

4  an academy inspection report was not available for review while the academy was suspended.

5       32.  On January 31, 2011, Plaintiff met with Pecinovsky to discuss the reason that

6  Pecinovsky's evaluation of Plaintiff was lower than all of Plaintiff's prior evaluations.

7  Pecinovsky replied, "It is what it is . . . I'm entitled to my opinion." When Plaintiff informed

8  Pecinovsky that employee evaluations must contain factual information, Pecinovsky replied, "No,

9  they don't."

10      33.  In February 2011, Plaintiff notified the Assistant Director, Alan Deal, that her

11  performance review was untruthful and given in retaliation for disclosure of improper invoicing.

12  The Assistant Director did not respond.

13      34.  In March 2011, Plaintiff submitted a written response to her latest performance

14  review and objected to the retaliation she received for disclosure of improper invoicing.

15      35.  From 2011 through 2012, Pecinovsky continued to harass and single out Plaintiff

16  from the other Level II Consultants.  For example, he attended every meeting of hers where he

17  interrupted, belittled, and contradicted Plaintiff in front of her co-employees and supervisors. He

18  micromanaged her by requesting copies of every meeting invite, a list of every attendee, and

19  reviewing all documents from her before they were sent.  Pecinovsky did not scrutinize or display

20  this behavior towards other Level II Consultants.

21      36.  In October 2011, Plaintiff successfully completed a promotional test and was placed

22  on the promotional list for Senior Law Enforcement Consultant, a supervisory position.

23      37.  From October 2011 through November 2012, Plaintiff was denied promotions on five

24  occasions.  At least three of the candidates who were promoted had less experience and

25  qualifications than Plaintiff.

26      38.  From January 2012 through December 2012, Plaintiff developed a new quality

27  control program for CCPOST which identified additional instances of overbilling by numerous

28  contractors.  In July 2012, Plaintiff presented these overbilling and noncompliance issues to the

1   Director, Assistant Director, and most CCPOST supervisors.  She detailed her findings regarding

2   the high number of contractors who were submitting false claims for payment based upon

3   budgeted amount and not actual cost, or ignoring CCPOST' protocol for safety (i.e., instructors

4   and class members not in attendance, safety concerns such as live gas canisters in the classroom).

5        39.  In October 2012, Michael Gomez, Plaintiff's supervisor, completed her 2012 annual

6   performance evaluation.  This performance evaluation contained the highest overall ratings

7   possible.  On approximately 6-7 occasions, Plaintiff asked Gomez whether she could serve as

8   acting supervisor in his absence.  However, each time, Gomez responded by shaking his head,

9   shrugging, or rolling his eyes towards upper management's offices indicating that this would not

10  be allowed.   Gomez left CCPOST shortly thereafter to take another position.

11       40.  In October 2012, Plaintiff's former co-worker, Anne Brewer, was promoted and

12  became Plaintiff's supervisor, replacing Gomez.

13       41.  In November 2012, Brewer cancelled Plaintiff's previously approved enrollment in a

14  specialized training class for law enforcement managers, as a way to enhance promotion.  Brewer

15  also cancelled the assignment of a support staff position which was previously approved to assist

16  Plaintiff.

17       42.  In December 2012, CalEMA concluded its second investigation of the San Diego

18  Regional Training Center invoices, and disallowed more than $177,000.

19       43.  Plaintiff took her vacation from December 15, 2012, through January 7, 2013.

20       44.  On Friday, January 4, 2013, Brewer, who Pecinovsky had assigned to take over

21  Plaintiff's role in working with the auditors, sent an email to Plaintiff, directing her to attend a

22  meeting in Brewer's office on Monday, January 7 at 8:00 a.m.

23       45.  When Plaintiff returned from her vacation on the morning of January 7, 2013, Brewer

24  and Darla Engler, from Human Resources, called Plaintiff into a meeting and provided her with a

25  counseling memorandum for late submission of an assignment, which, Brewer contended, was

26  allegedly due during Plaintiff's vacation.  Brewer and Engler also informed Plaintiff that she was

27  being placed on administrative leave "pending completion of an investigation of a complaint

28  alleging discourteous and unprofessional conduct."  Brewer and Engler refused to provide

FIRST AMENDED COMPLAINT FOR DAMAGES          8          Case No. 34-2014-00164423

1 | Plaintiff with any details of the complaint other than it involved "the Sacramento airport" and "a
2 | rental car." Instead, Engler escorted Plaintiff from the building in view of other CCPOST
3 | employees, and revoked her access to her email account, CCPOST computer systems, travel
4 | reimbursement system, cell phone, calendars, and work materials.

5 |      46.   Between January 7, 2013 and March 1, 2013, CCPOST refused to provide additional
6 | information regarding the allegations against Plaintiff. CCPOST's alleged investigation was
7 | biased and conflicted, and the outcome was predetermined. Brewer served as the only
8 | investigator despite being married to an employee of SDRTC. Brewer refused to consider all the
9 | pertinent evidence. She refused to contact additional witnesses which were identified and she
10 | failed to contact and re-interview initial witnesses. Instead, Brewer obtained statements from
11 | SDRTC's staff alleging that, three years prior, Plaintiff had "harassed" them during her
12 | investigation of SDRTC's fraudulent invoices to CCPOST. Brewer also included statements from
13 | Pecinovsky, among others, contending that they never approved Plaintiff to work offsite for
14 | CCPOST while in Reno. These statements were false because Plaintiff did receive approval, as
15 | confirmed by her timesheets and emails with Pecinovsky. On or about March 22, 2013, the
16 | selective information gathered by Brewer was compiled into a report.

17 |      47.   On March 29, 2013, CCPOST terminated Plaintiff's employment for false,
18 | inconsistent, and untrustworthy reasons. Given the allegations of dishonesty against Plaintiff, her
19 | career in law enforcement is over.

20 |      48.   Since Plaintiff Evans' termination, she has reasonably and diligently sought
21 | comparable employment. However, Defendants have obstructed Plaintiff's efforts to obtain
22 | gainful employment. Defendants have published false information about Plaintiff, including false
23 | accusations that she was terminated for "dishonesty."

24 |      49.   Plaintiff has exhausted all appropriate administrative remedies, including the filing of
25 | a complaint with the Labor Commissioner. Plaintiff filed a timely government tort claim with the
26 | Defendants, which has been rejected. Plaintiff has filed this complaint within 6 months of the
27 | rejection.

28 |

**FIRST CAUSE OF ACTION**
**WHISTLEBLOWER RETALIATION**
**(Violations of Labor Code § 1102.5)**
**(Against all Defendants)**

50.  Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

51.  At all relevant times, Plaintiff was an employee of Defendant CCPOST.

52.  Plaintiff made complaints in the workplace and to government agencies pertaining to CCPOST and its contractors' fraudulent misrepresentations and misuse of Federal grants. This includes but is not limited to violations of (a) California State Contracting Manual, California Government code § 8546.7; (b) Code of Federal Regulations Title 28 Part 66.20, (c) Code of Federal Regulations Title 2 Part 225 Appendix A; (d) California Government Code § 16580, and (e) California State Administrative Code chapter 8776. Labor Code § 1102.5 prohibits employers from making, adopting, or enforcing a policy that prevents an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation or noncompliance with a state of federal rule or regulation. This statute also prohibits an employer from retaliating against an employee for disclosing such information.

53.  Plaintiff was subjected to adverse employment actions when she was removed from her position of reviewing federal grants received by CCPOST, received a low performance evaluation, and was terminated from her position as a Law Enforcement Consultant II for Defendant CCPOST.

54.  Plaintiff was terminated in retaliation for her lawful exercise of rights provided under Labor Code § 1102.5, including but not limited to: reporting fraud to government agencies, and opposing, protesting, or refusing to participate in activities she reasonably believed to be illegal.

55.  Defendants violated Labor Code § 1102.5, when they terminated Plaintiff's employment in response to her making such complaints and took other adverse employment actions against Plaintiff, as a direct result of her complaints in the workplace pertaining to SDRTC's mismanagement of the grant funded contract and failure to justify claimed

1   reimbursement for expenses, which constituted violations of the California Budget Manual, and
2   the California Administrative Manual.

3       56.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of
4   employment, indignity, great humiliation and emotional distress manifesting in physical
5   symptoms.

6       57.  Defendants' actions have caused and continue to cause Plaintiff substantial losses in
7   earnings, significant reputation and professional injury, loss of promotional opportunities and
8   other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and
9   benefits, cost of suit, humiliation, embarrassment and anguish, all to her damage in an amount
10  according to proof.

11      58.  The acts of the individual Defendants as alleged herein, were intentional, outrageous,
12  despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause
13  Plaintiff mental anguish, anxiety, and distress, entitling plaintiff to punitive damages against the
14  individual Defendants.

15                          **SECOND CAUSE OF ACTION**
16      **RETALIATION FOR DISCLOSING FALSE CLAIMS [FEDERAL LAW]**
        **(Violation of Federal False Claims Act, 31 U.S.C. § 3730(h))**
17                          **(v. Defendant CCPOST)**

18      59.  Plaintiff incorporates each of the foregoing paragraphs as though fully set forth
19  herein, and further alleges as follows.

20      60.  The Federal False Claims Act prohibits an employer from discharging, threatening,
21  harassing, or otherwise discriminating against an employee in the terms and conditions of
22  employment because of lawful acts undertaken by the employee in furtherance of an action under
23  the Act or other efforts to stop one or more violations of this subchapter.  Furtherance of an action
24  under the Act includes actions to disclose to the government/law enforcement agency false claims
25  and to participate in/act in furtherance of the investigation of such.

26      61.  As alleged herein, Plaintiff reported to various government agencies that Defendant
27  CCPOST and various employees were engaged in and/or ratified fraud related to the obtaining,
28  documenting, monitoring, and misuse of Federal grants.  This includes but is not limited to

_____
FIRST AMENDED COMPLAINT FOR DAMAGES        11        Case No. 34-2014-00164423

1   violations of (a) Code of Federal Regulations Title 28 Part 66 and (b) Code of Federal

2   Regulations Title 2 Part 225 Appendix A.

3       62.  Under 31 U.S.C. § 3730(h), Defendants, jointly and/or severally are liable for all

4   relief necessary to make Plaintiff whole, including reinstatement or front pay, two times the

5   amount of back pay, interest on the back pay, compensation for any special damage sustained as a

6   result of the retaliation, plus litigation costs and reasonable attorneys' fees.

7       63.  The individual Defendants did the acts alleged herein maliciously, fraudulently, and

8   oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious

9   disregard of the rights of Plaintiff, and/or with an improper and evil motive amounting to malice

10   thus entitling Plaintiff to punitive damages against the individuals Defendants.

11   
12   
13   
    **THIRD CAUSE OF ACTION**
**RETALIATION FOR DISCLOSING FALSE CLAIMS [STATE LAW]**
**(Violation of Government Code § 12653)**
**(Against all Defendants)**

14       64.  Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

15   herein, and further alleges as follows.

16       65.  California Government Code § 12653(b), prohibits an employer from demoting,

17   disciplining, threatening, or otherwise acting against an employee in the terms and conditions of

18   her employment because of his actions taken to disclose to the government/law enforcement

19   agency false claims and to participate in/act in furtherance of the investigation of such.

20       66.  As alleged herein, Plaintiff reported to various government agencies that Defendant

21   CCPOST and various employees were engaged in and/or ratified fraud related to obtaining,

22   documenting, monitoring, and misuse of federal grants.

23       67.  Under Cal. Gov. Code § 12653(b), Defendants, jointly and /or severally are liable for

24   all relief necessary to make Plaintiff whole, including reinstatement or front pay, two times the

25   amount of back pay, interest on the back pay, compensation for any special damage sustained as a

26   result of the retaliation, plus litigation costs and reasonable attorneys' fees.

27       68.  The individual Defendants did the acts alleged herein maliciously, fraudulently, and

28   oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious

1  disregard of the rights of Plaintiff, and/or with an improper and evil motive amounting to malice

2  thus entitling Plaintiff to punitive damages against the individuals Defendants.

3      69.  As a result of the retaliation against him, Plaintiff has suffered, and continues to

4  suffer, damages, as set forth above.

**FOURTH CAUSE OF ACTION
WHISTLEBLOWER PROTECTION ACT
(Violation of Government Code §8547.8)
(Against all Defendants)**

8      70.  Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

9  herein, and further alleges as follows.

10     71.  California Government Code § 8547.8 protects whistleblowing state employees from

11  retaliation by their employers.

12     72.  As alleged herein, Plaintiff made good faith communications to her supervisors,

13  including Pecinovsky and Brewer, disclosing information that may constitute an improper

14  governmental activity, including misuse of federal funds.  Specifically, plaintiff advised that

15  SDRTC had claimed reimbursement for expenses that could not be supported and violated

16  Government Code section 12650 et seq., the California Budget Manual, California Administrative

17  Manual, and were wasteful.  Further, Plaintiff reported that CCPOST was complicit in not

18  addressing the misuse of federal funds.  Accordingly, her communications were protective

19  disclosures.

20     73.  As a direct and proximate result of making these protective disclosures, Plaintiff was

21  demoted, disciplined, threatened, and wrongfully terminated.

22     74.  Plaintiff has exhausted all administrative remedies required before filing this

23  complaint.

24     75.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of

25  employment, indignity, great humiliation and emotional distress manifesting in physical

26  symptoms.

27     76.  Defendants' actions have caused and continue to cause Plaintiff substantial losses in

28  earnings, significant reputational and professional injury, loss of promotional opportunities and

1   other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and

2   benefits, cost of suit, humiliation, embarrassment and anguish, all to her damage in an amount

3   according to proof.

4      77.   The acts of the individual Defendants as alleged herein, were malicious, intentional,

5   outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff

6   and to cause Plaintiff mental anguish, anxiety, and distress, entitling Plaintiff to punitive damages

7   against the individual Defendants.

8                        **FIFTH CAUSE OF ACTION**
                      **(Violation of 42 U.S.C. §1983)**
9                     **(Defendants Pecinovsky, Brewer)**

10     78.   Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

11   herein, and further alleges as follows.

12     79.   Defendants Pecinovsky and Brewer's actions and failures as alleged above

13   constitute violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983. Defendants

14   Pecinovsky and Brewer, while acting under color of authority and law, wrongfully and

15   intentionally retaliated against Plaintiff as described above.

16     80.   Further, Defendants Pecinovsky and Brewer violated Plaintiff's procedural and

17   substantive due process rights guaranteed to her under the due process clause of the Fourteenth

18   Amendment of the United States Constitution when they (1) refused to provide Plaintiff with a

19   fair and impartial due process hearing prior to termination, (2) refused to provide Plaintiff with a

20   neutral and unbiased hearing officer to determine if Plaintiff should be terminated, (3) refused to

21   comply with the procedural protections afforded to her, and (4) terminated Plaintiff for untrue

22   stigmatizing information that has resulted in plaintiff being blacklisted in law enforcement.

23     81.   Further, Defendants violated Plaintiff's First Amendment rights, in that Defendants

24   retaliated against Plaintiff for making complaints of public concern to Defendants, including the

25   whistleblower allegations alleged above.

26     82.   Defendants' actions have caused and continue to cause Plaintiff substantial losses

27   in earnings, significant reputation and professional injury, loss of promotional opportunities and

28

1   | other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit,

2   | humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

3   |     83.    The acts of the individual defendants, Pecinovsky and Brewer, as alleged herein,

4   | were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent

5   | to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress.  Defendants' acts

6   | were done in conscious disregard of the risk of severe emotional harm to plaintiff and with the

7   | intent to injure plaintiff, constituting oppression, fraud, malice under California Civil Code

8   | §3294, entitling Plaintiff to punitive damages as to the individual defendants.

9   |  

10  |  

**SIXTH CAUSE OF ACTION**
(Violations of the FMLA
29 U.S.C. § 2617(a) – All Defendants)

11  |     84.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

12  | herein, and further alleges as follows.

13  |     85.    In October of 2009, Plaintiff submitted a written request to Defendants for leave to

14  | attend to her mother's serious medical conditions.  CCPOST did not notify Plaintiff of FMLA

15  | eligibility or the application procedure.  Had Plaintiff been properly informed that she was

16  | eligible for FMLA leave, she would have requested it.

17  |     86.    In March of 2010, Plaintiff experienced a serious fall which resulted in a detached

18  | anterior cruciate ligament in her right knee.  After Plaintiff's surgery at Renown Regional

19  | Medical Center in Reno in June of 2010, she continued her rehabilitation and continuing

20  | treatment at the Reno Orthopedic Clinic in Nevada, which rendered her unable to perform the

21  | extensive travel functions of her position with CCPOST.  CCPOST did not notify Plaintiff of

22  | FMLA eligibility or the application procedure.  Instead, Defendant Pecinovsky insisted that

23  | Plaintiff fly to San Diego to attend a meeting, against her physician's orders.  Had Plaintiff been

24  | properly informed that she was eligible for FMLA leave, she would have requested it.

25  |     87.    On March 1, 2013, Plaintiff notified supervisors Anne Brewer and Stephanie

26  | Scofield that she, again, needed leave to provide assistance to her mother for medical reasons.

27  | CCPOST, including Brewer and Scofield, failed to notify Plaintiff of eligibility for FMLA, or

28  | provide reasonable accommodations.

88.   On each occasion described above, Plaintiff had worked at least 1,250 hours of service with CCPOST during the previous 12-month period.  On this basis, she alleges that she is an "eligible employee" as that term is defined in the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611(2).

89.   CCPOST qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4).

90.   On each occasion described above, there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C § 2612(1), and Plaintiff was denied her entitlement to leave as prescribed in FMLA.

91.   Plaintiff is informed and believes, and on that basis alleges, that Plaintiff was entitled to restoration to her position as described in the FMLA, 29 U.S.C. § 2614(1), and that Plaintiff was denied restoration to the same or equivalent position as prescribed in FMLA.

92.   Plaintiff is informed and believes and on that basis alleges that Defendants are responsible under the FMLA, 29 U.S.C. § 2617(a).

93.   As the result of Plaintiff's forced termination, Plaintiff has incurred, and is now incurring, a loss of wages within the meaning of the FMLA, 29 U.S.C. § 2617(a), including back pay from the effective date of termination, lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617, and attorney fees.

### SEVENTH CAUSE OF ACTION
(Violations of the CFRA
Cal. Govt. § 12945.1 et. seq. – All Defendants)

94.   Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

95.   Plaintiff was an eligible employee for purposes of the California Family Rights Act, Government Code § 12945.1 et. seq.

96.   Plaintiff requested family and medical leave from Defendant.

97.   Plaintiff advised Defendants of the serious medical condition and emergency family situations, and requested leave in accordance with the CFRA.

1      98.    The CFRA prohibits Defendants from interfering, restraining, denying,

2 discriminating or retaliating against an employee for exercising family medical leave rights, or

3 denying an eligible employee's family medical leave.

4      99.    In acting above, Defendants violated the CFRA with regard wo Plaintiff when it

5 discriminating against Plaintiff for attempting to seek protected leave, retaliated against Plaintiff

6 in taking adverse employment actions for Plaintiff's exercise of rights under the CFRA, interfered

7 with Plaintiff's requests for medical leave, restrained Plaintiff's family medical leave, denied

8 leave, and ultimately terminated Plaintiff's employment as a result of Plaintiff's requests for

9 CFRA leave.

10      100.    Defendant's actions have caused and continue to cause Plaintiff substantial losses

11 in earnings, significant reputation and professional injury, loss of promotional opportunities and

12 other employment benefits, lost wages, liquidated damages, attorneys' fees, medical expenses,

13 future earnings and benefits, cost of suit, all to her damage in an amount according to proof.

14 **PRAYER FOR RELIEF**

15      Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

16      1.   That Defendants are found to have violated the above-referenced provisions of the

17 California Labor Code, the California Government Code and the Federal False Claims Act 31

18 U.S.C. § 3730(h), Cal. Government Code § 12653, Cal. Lab. Code § 1102.5, 29 U.S.C. § 2617,

19 42 U.S.C. § 1983, California Family Rights Act, and the Family Medical Leave Act as to

20 Plaintiff;

21      2.   That Defendants are required to pay compensatory damages, including but not limited

22 to two times the amount of back pay, front pay, interest on back pay, pre- and post-judgment

23 interest, and damages for emotional pain and suffering due to retaliation inflicted upon Plaintiff,

24 among other relief;

25      3.   That the individual Defendants are required to pay Plaintiff punitive damages for their

26 malicious, reckless or callous indifference to the rights of Plaintiff;

27      4.   That Plaintiff receives an award in the amount of unpaid wages owed, including

28 interest thereon, and penalties subject to proof at trial;

1       5.   For equitable and/or injunctive relief according to proof;

2       6.   That Plaintiff receives an award of reasonable attorneys' fees and costs pursuant to 31

3   U.S.C. § 3730(h), California Govt. Code § 12653(c), Code of Civil Procedure § 1021.5,

4   California Labor Code § 1102.5, 29 U.S.C. § 2617, California Family Rights Act, Family Medical

5   Leave Act, and 42 U.S.C. § 1983 as well as any other applicable statute;

6       7.   That the Court order further relief, in law or equity, as it deems appropriate and just.

7   **DEMAND FOR JURY TRIAL**

8       Plaintiff hereby demands a trial by jury.

9

10   Dated:  August 7, 2015               Respectfully submitted,
                                           BROWN POORE LLP

11

12                             By:

13                                     Scott A. Brown

14                                     Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED
CIVIL DROP BOX

2015 AUG 10  PM 1:34

CDSSC COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

NOTICE TO DEFENDANT: California Commission on Peace
*(AVISO AL DEMANDADO):* Officers Standards and Training
and Does 1-25 inclusive,

YOU ARE BEING SUED BY PLAINTIFF: TAMARA EVANS
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
Superior Court Of California,
Sacramento
JUN - 4 2014
mchapman3
By *mchapman* , Deputy
Case Number:
34-2014-00164423

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):*

Sacramento County Superior Court
720 9th Street
Sacramento, CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mark E. Ellis-127159;  William A. Lapcevic-2388    (916) 283-8820   (916)283-8821
ELLIS LAW GROUP, LLP
740 University Ave., Ste. 100
Sacramento, CA 95825

DATE: JUN - 4 2014          Clerk, by *M Chapman* , Deputy
*(Fecha)*                  *(Secretario)*              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* California Commission on Peace Officers Standards and Training

under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☒ other *(specify):* CCP 416.50 (Public Entity)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal
Solutions
Ca Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mark E. Ellis, SBN 127159<br>ELLIS LAW GROUP, LLP<br>740 University Ave., Ste. 100<br>Sacramento, CA 95825<br>TELEPHONE NO.: (916) 283-8820  FAX NO.: (916)283-8821<br>ATTORNEY FOR (Name): Tamara Evans | FILED<br>Superior Court Of California,<br>Sacramento<br>JUN - 4 2014  ve<br>mchapman3<br>By m.chapman , Deputy<br>Case Number:<br>34-2014-00164423 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Courthouse

CASE NAME: EVANS v. CCPOST

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400-3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [x] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive

4. Number of causes of action (specify):  One

5. This case [ ] is  [x] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 3, 2014

Mark E. Ellis
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

1   Mark E. Ellis – 127159
    William A. Lapcevic – 238893
2   Steven T. Kelly – 290947
    ELLIS LAW GROUP, LLP
3   740 University Avenue, Suite 100
    Sacramento, CA 95825
4   Tel: (916) 283-8820
    Fax: (916) 283-8821
5
    Attorneys for
6   TAMARA EVANS

FILED
Superior Court Of California,
Sacramento            ve
     JUN - 4 2014
mchapman3
By M-Chapman Deputy
Case Number:
**34-2014-00164423**

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF SACRAMENTO

10

11   TAMARA EVANS,                          Case No.:

12          PLAINTIFF,                       **COMPLAINT FOR DAMAGES**

13   v.                                      1.  Wronful Termination in Violation of
                                                 Public Policy
14   CALIFORNIA COMMISSION ON PEACE
     OFFICERS STANDARDS AND TRAINING and    **DEMAND FOR JURY TRIAL**
15   DOES 1 through 25 inclusive,

16          DEFENDANTS.

17

18          COMES NOW Plaintiff TAMARA EVANS, who alleges, as follows:

19                              I.    PARTIES

20      1.    Plaintiff, TAMARA EVANS (hereinafter "Plaintiff"), is and at all relevant times was an

21   employee of CALIFORNIA COMMISSION ON PEACE OFFICERS STANDARDS AND

22   TRAINING, from June 2004 through March 29, 2013.

23      2.    Plaintiff is informed and believes, and on that basis alleges, Defendant CALIFORNIA

24   COMMISSION ON PEACE OFFICERS STANDARDS AND TRAINING (hereinafter "CCPOST") is

25   and at all times mentioned herein was an entity of the State of California with its principal place of

26   business in Sacramento, California. Plaintiff is informed and believes, and on that basis alleges, that

27   CCPOST, is and at all times mentioned in this Complaint was authorized to operate and do business in

28   ///

                                          - 1 -

                               COMPLAINT FOR DAMAGES

1 the State of California and its headquarters are located at 1601 Alhambra Boulevard, Sacramento,

2 California 95816.

3      3.      Plaintiff is unaware of the true names of the Defendants sued herein as DOES 1 through 25,

4 and therefore sues these Defendants by fictitious names pursuant to Code of Civil Procedure section

5 464. Plaintiff will seek leave to amend this complaint to allege their true names and capacities when

6 ascertained. Plaintiff is informed and believes and thereon alleges, that each of these fictitiously

7 named Defendants are legally responsible in some manner for the occurrences herein alleged and that

8 the injuries of Plaintiff as herein alleged have been proximately caused by the aforementioned

9 fictitiously named Defendants, and each of them.  All allegations and causes of action in this

10 Complaint are asserted against such fictitiously named Defendants and are designated as Defendants as

11 set forth herein.

12      4.      Plaintiff is informed and believes and on that basis alleges, that at all times mentioned

13 herein Defendants were the agents, employees, partners, principles, representatives and/or affiliates of

14 each of the remaining Defendants and were, at all times herein mentioned, acting within the course and

15 scope of such relationship, unless otherwise alleged.  Moreover, Plaintiff is informed and believes, and

16 on that basis alleges, that at all times mentioned herein, each of the Defendants did confirm, consent to,

17 affirm, direct, authorize, acknowledge, and ratify the acts of each and every one of the Defendants

18 herein as to each of the acts hereinafter alleged.

19                  **II.    JURISDICTION AND VENUE**

20      5.      Jurisdiction of this Court arises under California Code of Civil Procedure section 410.10.

21      6.      Venue is proper in Sacramento County, California, pursuant to California Code of Civil

22 Procedure section 395, because Sacramento is the place where the wrongful actions and injuries

23 occurred, and where Defendants operate and conduct their day-to-day business.

24                 **III.    GENERAL ALLEGATIONS**

25      7.      Plaintiff incorporates paragraphs 1 through 6, inclusive as though fully set forth herein.

26      8.      Plaintiff is informed and believes, and on that basis alleges, Defendant CCPOST was

27 established in 1959 and tasked with the responsibility to set the minimum selection and training

28 standards for California law enforcement.

- 2 -

9.      From June 2004 and continuing through March 29, 2013, Plaintiff was employed as a Law Enforcement Consultant II with CCPOST.  Her duties required her to, among other things, manage grant-funded contracts, review and approve invoices submitted for payment by contractors to CCPOST and participate in audits of CCPOST's expenditures.

10.      One of Plaintiff's assignments was to manage and oversee the Federal grants received by CCPOST, including but not limited to overseeing Federal funding received via the California Emergency Management Agency (CalEMA) for law enforcement training courses. CCPOST received these sub-awarded grant funds from CalEMA, who was a direct recipient of funds from the Federal government.

11.      On information and belief, from 1997 until March 29, 2013, CCPOST has accepted Federal Violence Against Women Act ("VAWA") grants in order to present training to law enforcement personnel. Since the initial funding, CCPOST has contracted with the San Diego Regional Training Center ("SDRTC") to facilitate course presentations. In February 2010, Plaintiff received notice that CalEMA planned to perform a monitoring visit in March 2010 and review CCPOST's expenditures of the Federal VAWA grant funds.  Prior to its arrival, CalEMA sent a list of required documentation that CCPOST was required to produce for the visit.

12.      Plaintiff attempted to compile the necessary documentation for CalEMA's visit.  However, CCPOST's files contained no supporting documentation by SDRTC to account for such expenditures. In February 2010, Plaintiff contacted (former) SDRTC director, Michele Thompson ("Thompson"), and requested receipts, invoices, or any other supporting documentation to justify SDRTC's claims for reimbursement.

13.      Thompson refused to supply the necessary supporting documents and demanded a meeting with Plaintiffs' supervisor, Edmund Pecinovsky ("Pecinovsky").  Sometime in February or March 2010, Thompson and SDRTC staff met with Plaintiff and Pecinovsky at CCPOST's headquarters. Plaintiff explained to Thompson the reasons that CalEMA requested the necessary paperwork. However, Thompson again refused to provide the requested information. Pecinovsky stated that SDRTC could re-create documents or, if necessary, make entirely new documents to satisfy the CalEMA auditors.

- 3 -

14.  After the meeting, Plaintiff informed Pecinovsky that there were serious problems with SDRTC's management of the grant-funded contract. Plaintiff informed him that it appeared that SDRTC had claimed reimbursement for expenses which could not be justified or proven and that such conduct was in violation of both statutes and internal regulations, including but not limited to Government Code section 12650 *et. seq.*, the California Budget Manual and the California Administrative Manual. Pecinovsky directed Plaintiff to continue to prepare for the monitoring visit and that he would talk to Thompson regarding the documents.

15.  On or about March 16, 2010, CalEMA auditors arrived to perform the review of CCPOST's expenditures of grant funds. Plaintiff informed the auditors that SDRTC had failed to produce the necessary documentation for the requested reimbursement claims. Plaintiff further informed the auditors that it did not appear that SDRTC could justify their claimed expenses.

16.  The auditors informed Plaintiff that reimbursement for SDRTC's claimed expenses would be disallowed if CCPOST could not produce justifying documents. Further the auditors stated that the disallowed expenses would be reported as an adverse finding in their compliance review report of the monitoring visit.

17.  Pecinovsky never provided Plaintiff with any documentation of SDRTC's claimed expenses. When asked what was being done about SDRTC's invoices, Pecinovsky informed Plaintiff that he would "take care of it". Plaintiff repeatedly told Pecinovsky that CCPOST should not contract with SDRTC because the problems identified in the monitoring review constituted a violation of the regulations set forth in the Budget and Administrative regulations for payment of invoices to outside contractors and vendors.

18.  In the following months, Plaintiff reviewed other SDRTC invoices submitted to CCPOST for payment, which contained items such as payments for instructors, hotel costs, supplies for students and equipment. During such reviews, she found that none of SDRTC's invoices for claimed expenses included supporting documentation to justify their claims.

19.  On or about May 24, 2010, the auditor issued a compliance review report of the monitoring review. The report found that CCPOST had improperly sought reimbursement for "budget-based" costs instead of actual costs as required by the regulations. This finding resulted from information that

- 4 -

1   Plaintiff provided to the auditor regarding SDRTC's failure to produce justification for their invoices.

2       20.   . At or about the same time, Plaintiff informed Pecinovsky that she no longer felt

3   comfortable approving SDRTC's invoices for payment, because SDRTC could not properly justify the

4   claimed expenses and that she believed some of SDRTC's claimed expenses were false or inflated.

5   Pecinovsky became visibly agitated and directed Plaintiff to approve SDRTC's invoices, despite

6   Plaintiff's objections.

7       21.   Several times during May and June 2010, Plaintiff denied SDTRC's requests for

8   reimbursements that Plaintiff believed to be improper. Each time, SDTRC contacted Pecinovsky, who

9   overruled Plaintiff's decisions.

10      22.   On or about June 22, 2010, Plaintiff was directed to meet with Pecinovsky where he

11  informed Plaintiff that there seemed to be some "conflicts" between herself and SDRTC staff. After

12  the meeting, Plaintiff was temporarily away from her job while recuperating from knee surgery.

13      23.   After Plaintiff's knee surgery, she obtained a work release from her physician for "light

14  duty." She had previously notified Pecinovsky that her knee surgery and recuperation would take

15  place in Reno, Nevada. Pecinovsky directed her to "work offsite" and caused her electronic work

16  schedule to indicate that she was "working offsite" for CCPOST in Reno in June, July, August and

17  September 2010. Pecinovsky indicated in her time sheets for this period that she was working for

18  CCPOST.

19      24.   In September 2010, Plaintiff returned to work. Pecinovsky notified Plaintiff that her

20  responsibilities for review of reimbursement of spending of Federal funds relating contracts with

21  SDRTC had been reassigned to Anne Brewer ("Brewer"). Pecinovsky then reassigned Plaintiff to

22  perform minimal tasks with lower responsibility.

23      25.   From September 2010 through December 2011, Pecinovsky displayed a hostile, surly

24  demeanor toward Plaintiff and frequently refused to speak to Plaintiff or acknowledge Plaintiff's

25  presence in the workplace. On at least two occasions, Pecinovsky burst into Ms. Evans' office and

26  began screaming at her to complete various tasks. When Ms. Evans asked him to please lower his

27  voice, Pecinovsky shouted, "I am your supervisor. I can speak to you any way I want."

28  ///

26.     In January 2011, Pecinovsky provided Ms. Evans a copy of his 2010 annual performance evaluation of Plaintiff's work performance. The 2010 evaluation ratings were significantly lower than in prior years. The evaluation contained several negative comments, including some about Plaintiff's interaction with SDRTC. Pecinovsky refused to provide specific details about any of these events, such as when Plaintiff had been "slow in responding to phone calls and emails." Other erroneous comments included a false allegation of Plaintiff's "late" arrival before a meeting, and an exaggerated claim that an academy inspection report was not available for review when the academy was suspended.

27.     On January 31, 2011, Plaintiff met with Pecinovsky to discuss the reason that Pecinovsky's evaluation of Plaintiff was lower than all of Plaintiff's prior evaluations during her employment with CCPOST. Pecinovsky replied by stating "it is what it is," and "I'm entitled to my opinion." When Plaintiff informed Pecinovsky that employee evaluations had to contain factual information, Pecinovsky replied, "No, they don't."

28.     In October 2012, Michael Gomez, Plaintiff's new supervisor, completed her 2012 annual performance evaluation. The performance evaluation indicated the highest overall ratings possible.

29.     On Friday, January 4, 2013, Brewer, who Pecinovsky had assigned to take over Plaintiff's role in working with the auditor's, sent an email to Plaintiff, directing Plaintiff to attend a meeting in Brewer's office on Monday, January 7 at 0800 hours.

30.     On January 7, 2013, Brewer and Darla Engler ("Engler") provided Plaintiff with a counseling memorandum for late submission of an assignment. Brewer and Engler informed Plaintiff that she was being placed on administrative leave "pending completion of an investigation of a complaint alleging discourteous and unprofessional conduct." Brewer and Engler refused to provide Plaintiff with any details of the complaint other than it involved "the Sacramento airport" and "a rental car."

31.     Engler escorted Plaintiff from the building in view of other CCPOST employees, and revoked her access to her email account, CCPOST computer systems, travel reimbursement system, cell phone, calendars and work materials.

///

- 6 -

32.    Between January 7 and March 1, 2013 (53 days), CCPOST refused to provide further information regarding the allegations against Plaintiff. As a result of these actions, Plaintiff was forced to retain counsel.

33.    During CCPOST's alleged investigation, Brewer refused to contact additional witnesses which were identified and failed to contact and re-interview initial witnesses. Instead, Brewer obtained statements from SDRTC's staff alleging exaggerated or false events which occurred allegedly during 2010 related to SDRTC's failure to provide proper documentation of expenses which were unrelated to the investigation. Brewer also included false statements from Pecinovsky, among others, including his claim that he had never approved Plaintiff to work for CCPOST while in Reno. On or about March 22, 2013, the selective information gathered by Brewer was put together into a report.

34.    On March 29, 2013, CCPOST wrongfully terminated Ms. Evans' employment.

### IV: FIRST CAUSE OF ACTION
**(Wrongful Termination in Violation of Public Policy**
**against CCPOST and DOES 1-25 inclusive.)**

35.    Plaintiff incorporates paragraphs 1 through 34, inclusive as though fully set forth herein.

36.    Plaintiff was hired by Defendant CCPOST in June 2004 as a Law Enforcement Consultant II.

37.    On or about March 29, 2013, CCPOST wrongfully terminated Plaintiff from her employment because of Plaintiff's complaints and refusal to comply with her supervisor's directive to engage in actions which violated statutes and internal regulations, including but not limited to the California False Claims Act Government Code section 12650 et. seq., and regulations within the California State Budget Manual and the California State Administrative Manual related to recovery and payment of outside contractors and vendors by State entities.

38.    Plaintiff's refusal to comply with her supervisor's directive to engage in improper actions which violated statutes and internal regulations, including but not limited to the California False Claims Act Government Code section 12650 et. seq., and regulations within the California State Budget Manual and the California State Administrative Manual, related to recovery and payment of

///

- 7 -

1  outside contractors and vendors by State entities was a motivating factor for Plaintiff's discharge by

2  CCPOST.

3      39.    As a proximate result of this wrongful termination in violation of public policy, Plaintiff

4  was caused to suffer, and continues to suffer, from humiliation, anxiety, severe emotional distress,

5  worry, fear, and special damages, including but not limited to wage loss and general damages

6  according to proof at trial.

7      40.    CCPOST did the things hereinabove alleged, intentionally, oppressively, and maliciously

8  with an evil and malevolent motive to injure Plaintiff. These acts, which resulted in Plaintiff's

9  wrongful termination against public policy, were obnoxious, despicable, and ought not to be suffered

10  by any member of the community.

11      41.    Plaintiff has filed a timely notice of claim with both the California Victim Compensation

12  and Government Claims Board and with CCPOST, alleging that the above-described acts established

13  CCPOST's wrongful termination of Plaintiff.  Plaintiff's claim was rejected on December 3, 2013.

14  Plaintiff's Complaint is timely and has been filed within six months of the notice of rejection of claim.

15  Plaintiff has complied with all administrative prerequisites to suit and thus has exhausted her

16  administrative remedies.

17                  V.    PRAYER FOR RELIEF

18      WHEREFORE, Plaintiff prays for a judgment from this Court granting the following relief:

19      A.    General damages according to proof;

20      B.    Special damages according to proof;

21      C.    Assumed damages;

22      D.    Punitive damages according to proof at trial;

23      E.    Prejudgment interest on general and special damages;

24      F.    Costs of suit;

25      G.    Reasonable attorney's fees if so entitled; and

26      H.    Such other and further relief as this Court may deem just and proper.

27  ///

28  ///

- 8 -

VI.    DEMAND FOR JURY TRIAL

Plaintiff TAMARA EVANS hereby demands a jury trial in this matter.

Dated: June 3, 2014

ELLIS LAW GROUP, LLP

By _____
Mark E. Ellis
Attorneys for
TAMARA EVANS

- 9 -

COMPLAINT FOR DAMAGES