# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA EVANS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA COMMISSION ON PEACE OFFICERS STANDARDS AND TRANING; EDMUND PECINOVSKY; ANNE BREWER and DOES 1-25,<br><br>Defendant. | No. 2:15-CV-01951-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Tamara Evans ("Plaintiff") seeks redress from her former employer, California Commission on Peace Officers Standards and Training ("POST") and her supervisors, Edmund Pecinovsky ("Pecinovsky") and Anne Brewer ("Brewer"), (referred to collectively as "Defendants") for violations of, among other things, the United States' Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and California's Family Rights Act ("CFRA"), California Government Code § 12945.1.[1]  Plaintiff initially filed her complaint in state court, but Defendants removed the action to this Court pursuant to

---
[1] Plaintiff has also alleged violations of Cal. Labor Code § 1102.5, 31 U.SC. § 3730(h), Cal. Gov't Code § 12653, Cal. Gov't Code § 8547.8, and 42 U.S.C. § 1983.
[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).
[3] Unless otherwise noted, the facts are taken from the Complaint, Evan's Motion for Summary

1

28 U.S.C. § 1441(a). Presently before the Court is Plaintiff's Motion for Partial Summary Judgment (ECF No. 45) on the issue of liability only under the FMLA and the CFRA. For the following reasons, that Motion is DENIED.[2]

**BACKGROUND**[3]

Plaintiff worked for POST from June 2004 to March 2013. In October 2009, Plaintiff informed her supervisor, Frank Decker ("Decker"), that she was helping take care of her mother. Plaintiff explained that she was helping her mother with mobility, household chores, errands, meal preparation, basic hygiene, and doctor visits. She did not specifically state that she needed or intended to take a leave, nor did she request leave.

Plaintiff was apparently aware, however, that she was potentially going to be transferred to a different assignment, which would require her to take more time away from her mother, and she asked Decker what could be done about the transfer. Decker indicated he did not know and suggested that Plaintiff prepare a memorandum to his attention that he would forward to his supervisor, Alan Deal ("Deal").

Plaintiff prepared the memorandum, in which she asked to be assigned less travel so that she could attend to her mother's medical conditions. As with the original conversation with Decker, Plaintiff did not explicitly state in the memorandum that she needed or intended to take leave. Plaintiff also had a conversation about her mother's medical condition with Deal, who allegedly quizzed her on the specifics of her mother's physical capabilities and noted that "[i]t's always the oldest." Plaintiff understood this latter comment to mean that the responsibility of caring for a parent generally falls on the oldest child. At the conversation's conclusion, Deal told Plaintiff he would let her know if

---

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] Unless otherwise noted, the facts are taken from the Complaint, Evan's Motion for Summary Judgment, and Defendants' Opposition thereto.

2

he changed her assignment. Although Plaintiff's request was granted and she was not transferred, Defendants did not notify Plaintiff of her potential eligibility for FMLA leave or how to apply. Plaintiff claims that she would have requested such leave if she had been properly informed.

In March 2010, Plaintiff injured her knee, and, a few months later in June, she had her anterior cruciate ligament surgically repaired. After the surgery, she received continuous rehabilitation and treatment in Reno, preventing her from performing the travel functions of her job at POST. On July 30, 2010, Plaintiff provided Defendants Post and Pecinovsky with a work release and continued orders for physical therapy. In addition, Defendants contend, and Plaintiff does not appear to dispute, that POST's FMLA Officer, Marylyn Heald, mailed Plaintiff a letter informing her of her rights while she was out recovering from the knee surgery. Plaintiff nonetheless contends she was not aware of her eligibility for FMLA leave and that if she had been notified, she would have requested it.

Sometime in early 2013, Plaintiff became the subject of a disciplinary investigation and was placed on paid administrative leave. On March 1, 2013, as part of that investigation, Plaintiff had an internal investigatory interview with supervisors Brewer and Stephanie Scofield ("Scofield"). In that interview, Plaintiff allegedly informed Brewer and Scofield that she needed leave to provide assistance to her mother for medical reasons. Defendants dispute this fact, and offer competing evidence that Plaintiff did not in fact make such a request at that time. Whatever the case, on March 15, 2013, Plaintiff submitted an FMLA/CFRA certification form that indicated she would need leave for four hours a day, one or two days a week. On March 26, 2013, POST terminated Plaintiff's employment.

On February 28, 2014, Plaintiff filed a complaint with California's Department of Fair Employment and Housing, and on June 4, 2014, she initiated this action. Plaintiff now moves for partial summary judgment on the issue of liability as to the alleged FMLA and CFRA violations. Defendants oppose that Motion on four bases: (1) Plaintiff's

motion is untimely; (2) employees of public agencies cannot be held individually liable under the FMLA or CFRA;[4] (3) Plaintiff's' claims are time-barred; and (4) regardless, Plaintiff has not shown she is entitled to judgment as a matter of law on the merits of the foregoing claims. Although the Court rejects Defendant's arguments with respect to the timing of Plaintiff's Motion and individual liability under the FMLA, Plaintiff's motion is nonetheless DENIED because Defendants have established that triable issues of material fact preclude granting judgment in her favor.[5]

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

---

[4] Plaintiff clarified on Reply that she is not pursuing claims against the individual Defendants under the CFRA. Pl.'s Reply to Opp. to Mot. Summ. J., ECF No. 70, 2 n.1.

[5] The Court is cognizant that Defendants contend Plaintiff's Motion should be denied for failure to comply with Local Rule 260 based on her untimely filing of her separate statement of undisputed facts. Given the Court's preference for deciding cases on the merits, and the fact that Defendants missed their own deadline to file an opposition but were permitted additional time to do so, the Court finds this argument unpersuasive and declines to deny Plaintiff's Motion on this basis.

4

judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Individual Employees Of Public Agencies May Be Subject To Liability Under The FMLA.

Pecinovsky and Brewer ask that this Court deny Plaintiff's FMLA claims against them on the basis that the statute does not impose individual liability on employees of public agencies.  Although there is some support for their position in some out-of-circuit cases, this Court finds the authority to the contrary more persuasive.

The federal circuit courts that have considered this question are split.  Compare Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003) (concluding the FMLA does not impose individual liability on employees of public agencies) and Wascura v. Carver, 169 F.3d 683 (11th Cir. 1999) (same, albeit in a somewhat qualified fashion since the court concluded it was constrained by its own precedent, which did not extend individual liability under the FLSA to public agency employees), with Haybarger v. Lawrence Cty. Adult Probation & Parole, 667 F.3d 408 (3d Cir. 2012) (concluding the FMLA does impose individual liability on employees of public agencies), Modica v. Taylor, 465 F.3d 174 (5th Cir. 2006) (same), and Darby v. Bratch, 287 F.3d 673 (8th Cir. 2002) (same).

District courts outside of the Ninth Circuit are also split on the issue, but a majority of those courts have found that public employees can be subject to individual liability. See Bonzani v. Shinseki, 895 F. Supp. 2d 1003, 1007 (E.D. Cal. 2012) (citing cases). Finally, although the Ninth Circuit has yet to weigh in, district courts within this circuit have consistently held that the FMLA imposes individual liability on public agency employees. See Aguirre v. California, No.16-cv-005564-HSG, 2017 WL 5495953, *8–9 (N.D. Cal. Nov. 16, 2017); Bonzani, 895 F. Supp. 2d at 1010; Mercer v. Borden, 11 F. Supp. 2d 1190, 1191 (C.D. Cal. 1998); Morrow v. Putnam, 142 F. Supp. 2d 1271, 1273 (D. Nev. 2001).

Since none of those authorities bind this Court, however, it must first turn to the text of the statute itself. Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985). If the language of the statute is plain, "'the sole function of the court'—at least where the disposition required by the text is not absurd—'is to enforce it according to its terms.'" Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989). Such is the case here.

Under the FMLA, eligible employees are entitled to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1). If an employer "interfere[s] with, restrain[s], or den[ies] the exercise of" an employee's rights under the FMLA, 29 U.S.C. § 2615(a)(1), the employee can seek equitable and monetary relief in any court with jurisdiction. 29 U.S.C. § 2617(a)(2). To be eligible under the FMLA, an employee must have been employed for at least 12 months by and worked 1,250 hours for the employer from whom leave is requested. 29 U.S.C. § 2611(2). The FMLA defines "employer" as:

///
///
///
///

///

> (4) Employer
>
> (A) In general
>
> The term "employer"--
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes--
>
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>
> (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the Government Accountability Office and the Library of Congress.
>
> (B) Public agency
>
> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

Id. at § 2611(4).

On its face, the statute appears to impose liability on individual employees of public agencies. Section 2611(4)(A)(ii) provides that "any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer" is an "employer" under the statute. Under § 2611(4)(A)(iii), the term "employer" includes public agencies. It follows that "any person who acts, directly or indirectly, in the interest of a [public agency] to any employees of such [public agency]" is also an "employer." The Third, Fifth, and Eighth Circuits have adopted this plain reading of the statute and Plaintiff urges this Court to do the same. Defendants Pecinovsky and Brewer, on the other hand, urge the Court to instead adopt the opposing view held by the Sixth and Eleventh Circuits.

8

In support of their argument, Defendants cite primarily to the Sixth Circuit's decision in Mitchell, the leading case standing for the proposition that FMLA does not authorize individual liability for public supervisors. 343 F.3d 811. The Mitchell court found against individual liability in this context for three primary textual reasons, each of which Defendants reiterate here.[6] First, it placed great weight on the separation in the statute of the individual liability provision (§ 2611(4)(A)(ii)(I)) and the public agency provision (§ 2611(4)(A)(iii)) into two distinct clauses. Id. at 830. Second, the Mitchell court determined that "commingl[ing] the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities." Id. Finally, the court reasoned that if Congress had intended to provide for individual public liability under the FMLA, it would have utilized verbatim the definition of "employer" set forth in the Fair Labor Standards Act ("FLSA"), which in that circuit had been interpreted to impose individual liability on public supervisors, instead of modifying the definition slightly for use in the FMLA (i.e., separating the individual liability and public agency subsections from one another).[7] Id. Since Congress changed the structure of the definition slightly, that court concluded it must not have intended to carry over the liability from the FLSA to public supervisors in the FMLA. The Court disagrees with each of these conclusions.

As to the first argument, although the Mitchell court acknowledges the relationship between the stem, "[t]he term 'employer'—," and clauses (i)–(iv) individually, id. at 829, 830 ("The use of an em dash following 'employer' indicates that clauses (i), (ii), (iii), and (iv) modify the term 'employer.'"), it contests the relationship between the clauses

---

[6] The Mitchell court also identifies three factors extending beyond the statute's text that it concluded weighed in favor of its finding that the FMLA did not impose individual liability on public agency employees. But having found that the plain text of the statute mandates a contrary conclusion, those arguments need not be addressed.

[7] The FMLA expressly incorporates into its provisions a number of definitions. 29 U.S.A. § 2611(3) ("The terms 'employ', 'employee', and 'State' have the same meanings given such terms in [the FLSA]." The Mitchell court also points out that where the FMLA does so, it explicitly references the FLSA. It follows, the Mitchell court argued, that if Congress had intended the FMLA to use the same definition of employer as the FLSA, it would have directly referenced the FLSA instead of mirroring the language, albeit with a structural change.

9

themselves. Id. According to that court, there is no "punctuation demonstrating an inter-relationship between clauses (ii)-(iv)." Id. But that is simply not the case. There are semi-colons between each clause, § 2611(4)(A), and, as the court in Modica points out, an "and" following clause (iii), both of which suggests there is a relationship between the provisions. Modica, 465 F.3d at 185.

Nor does this Court's above interpretation of the statute result in oddities or render any statutory provisions superfluous. The Mitchell court contends otherwise by first attempting to illustrate the effect of "commingling" the various clauses:

> [W]hen the public agency provision is introduced into an interpretation with clauses (i) and (ii), the statute provides— "the term employer means any person engaged in interstate commerce . . . who employees (sic) 50 or more employees . . . ; and includes any person who acts directly or indirectly in the interest of any person engaged in interstate commerce . . . who employs 50 or more employees . . . ; and any successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees; and includes any public agency engaged in interstate commerce . . . who employs 50 or more employees . . . ; and includes any person who acts directly or indirectly, in the interest of the public agency engaged in interstate commerce . . . who employs fifty or more employees; and any successor in interest of the public agency . . . engaged in interstate commerce . . . who employs fifty or more employees . . . ."

Mitchell, 343 F.3d at 830–31. This commingling of the clauses results, as the Mitchell court points out, in obvious redundancy. Such commingling, however, is forced. There are four clauses that modify "employer." To prove its point, that court replaced the modified term with its modifications at the same time and read through it. But showing that swapping all of the modifications of the term "employer" for the term itself at the same time results in a redundant and abstruse reading of the statute does not necessarily preclude the statute from imposing individual liability on public agency employees. As the Modica court noted:

> [w]hile this statute becomes recursive when applied to supervisory personnel, because the definition of employer refers back to the word employer itself, there is no reason to assume that the term "employer" in subparagraph 4(A)(ii) means anything other than what Congress defined it to mean

10

in the various definitions of paragraph 4(A).

Modica, 465 F.3d at 186 (quoting Morrow, 142 F. Supp. 2d at 1272).

The Mitchell court next reasoned that the commingling of the clauses renders superfluous § 2611(4)(B), which states, "a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce." On the contrary, however, § 2611(4)(B) still "relieves plaintiffs of the burden of proving that a public agency is engaged in commerce." Modica, 465 F.3d at 186. This utility survives construing the statute as imposing individual liability on public employees.

Finally, it does not necessarily follow from Mitchell's third argument (i.e., that Congress expressly references the FLSA in other areas where it adopts an FLSA definition) that because Congress may reference the FLSA it must always do so. Nor does the failure to expressly adopt the language used in the FLSA mean that Congress intended to refrain from imposing individual liability on public agency employees. Even though the language of the two statutes differs slightly, the FMLA and FLSA definitions of employer are nearly identical. Indeed, the only non-structural difference is that the FLSA references labor organizations and the FMLA references successors in interest. Ultimately, however, "[t]hese differences are easily explained as act-specific definitions and do not appear to alter the meaning of the definition as to public employees." Bonzani, 895 F. Supp. 2d at 1009. And as to the structural changes (i.e., putting "public agency" in its own subsection), they simply do not compel the conclusion that the statute does not impose individual liability on supervisors at public agencies.

Additionally, the Code of Federal Regulations, when stating who qualifies as an employer under the FMLA, uses virtually the same definition of employer that is found in the FLSA. Compare 29 C.F.R. § 825.104(a) ("Employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency."), with 29 U.S.C. § 203(d) ("'Employer' includes any person acting

directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."). The Code of Federal Regulations also explicitly recognizes the similarities between the FMLA and the FLSA with respect to individual employees at private companies:

> An "employer" includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees. The definition of "employer" in section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 203(d), similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee. As under the FLSA, individuals such as corporate officers "acting in the interest of an employer" are individually liable for any violations of the requirements of FMLA.

29 C.F.R. § 825.104(d). There is no compelling reason to conclude that Congress intended to treat managers in the public sphere any differently. In sum, this Court agrees with the Third, Fifth, and Eighth Circuits that under the most straight-forward reading of the statute, the FMLA imposes individual liability on employees of public agencies, and Defendants' argument to the contrary is thus rejected.[8]

**B.     Summary Judgment Is Nonetheless Inappropriate On This Record.**

Plaintiff argues she is entitled to summary judgment as to Defendants' liability for interfering with Plaintiff's rights under both the FMLA and the CFRA. To prove a prima facie case of FMLA interference, Plaintiff must establish that: (1) she was eligible under FMLA; (2) the employer was subject to the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) the employer denied FMLA benefits that she was entitled to. Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014).[9] The crux of the parties' dispute with respect to the

---

[8] Although this Court holds that Pecinovsky and Brewer may be held individually liable under the FMLA, the Court makes no finding as to whether they are in fact liable.

[9] The CFRA adopts the language of the FMLA and California state courts have held that they consist of the same substantive standards. See Dudley v. Dep't of Transp., 90 Cal. App. 4th 255, 261 (2001). Accordingly, the remainder of this Order references only the FMLA but recognizes and acknowledges that the reasoning applies equally with respect to both the FMLA and the CFRA. See

12

1 current Motion is whether Plaintiff provided adequate notice to Defendants that she
2 intended to take leave.

3 Employees need not expressly mention the FMLA or CFRA to satisfy the notice
4 requirement. Alejandro v. ST Micro Electronics, Inc., 178 F. Supp. 3d 850, 865 (N.D.
5 Cal. 2016). That said, the FMLA does not "require [employers] to be clairvoyant."
6 Brenneman v. MedCintral Health Sys., 366 F.3d 412, 428 (6th Cir. 2004). Ultimately, the
7 "critical question is whether the information the employee gave the employer is sufficient
8 to reasonably appraise it of the employee's request to take time off for a serious health
9 condition." Escriba, 793 F. Supp. 2d 1147, 1160–61. This is generally a question of
10 fact. See id. at 1160; Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303-
11 04 (3d Cir. 2012); Hopson v. Quitman Cty. Hosp. & Nursing Home, Inc., 126 F.3d 635,
12 640 (5th Cir. 1997).

13 In this case, there are triable issues of fact as to whether Plaintiff's statements to
14 Defendants regarding her mother's and her own medical conditions in 2009 and 2010
15 triggered Defendants' duty to inform Plaintiff she might be eligible for leave. Under
16 29 CFR § 825.300(b)(1), employers must notify employees of their eligibility to take
17 FMLA when (a) employees request FMLA leave; or (b) "when the employer acquires
18 knowledge that an employee's leave may be for an FMLA-qualifying reason." Plaintiff
19 essentially argues that because she relayed to Defendants facts indicating she might be
20 entitled to leave, even if she did not ask for or schedule any particular time off,
21 Defendants were required to inform her of her FMLA rights. But whether her factual
22 statements are sufficient to have triggered Defendants' notification obligations,
23 especially in circumstances where, as here, the parties were not discussing leave in the
24 first place, is a question for the jury.[10]

---

Moreau v. Air France, 2002 WL 500779, *1 (N.D. Cal. Mar. 25, 2002) (discussing only the FMLA on the grounds that the CFRA and the FMLA are "substantively identical").
 [10] Defendants also offer evidence to dispute Plaintiff's statements that they failed to properly notify Plaintiff of her rights when they provided posters in their breakrooms, information in their employee manual, and a letter sent to Plaintiff in 2010. See Opp. at 9. These questions of fact as to what Plaintiff knew and when also preclude the Court from granting summary judgment.

Whether Plaintiff's conduct in 2013 triggered Defendants' notice obligations is also a factual question. Plaintiff alleges that during the disciplinary investigation interview on March 1, 2013, she told Brewer and Scofield she needed leave to provide assistance to her mother. Pl.'s Mot. Summ. J., ECF No. 45, 3:14–17. Defendants, however, offer evidence to the contrary. Broussard Decl., Ex. 5, 57:9-58:11. Summary judgment would thus be inappropriate.[11]

## CONCLUSION

For the foregoing reasons Plaintiff's Motion for Partial Summary Judgment (ECF No. 45) is DENIED.

IT IS SO ORDERED.

Dated: March 21, 2018

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[11] Given the foregoing, the Court need not address here Defendants' contention that Plaintiff's Motion should be denied for the alternative reason that her claims are time-barred. Even if Defendants are correct, since they did not themselves move for summary judgment, that would not change the disposition here because the Court has already determined Plaintiff's claims must go to the jury.

14