UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA EVANS,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA COMMISSION ON PEACE OFFICERS STANDARDS AND TRAINING, et al.,<br><br>  Defendants. | No. 2:15-cv-01951-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

This action proceeds on Plaintiff Tamara Evans' ("Plaintiff") claims against Defendants California Commission on Peace Officers Standards and Training ("POST"), Edmund Pecinovsky, and Anne Brewer (collectively, "Defendants") arising out of her purportedly wrongful termination.  Presently before the Court is Defendants' Motion for Partial Summary Judgment, which has been fully briefed.  ECF Nos. 120, 122-23.  For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.[1]

///

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

1

# BACKGROUND[2]

Between June 2004 and March 2013, Plaintiff was employed as a Law Enforcement Consultant II with Defendant POST.  Plaintiff asserts that her eventual termination was the culmination of a pattern of retaliatory acts to which she was subjected after she acted as a whistleblower in disclosing wrongdoing on the part of POST and the Southern California (aka San Diego) Regional Training Center ("RTC").  Those allegedly responsible for the retaliation include Defendants Pecinovsky and Brewer.

Following her termination, Plaintiff filed several actions including: an appeal from her dismissal and a whistleblower retaliation complaint with the California State Personnel Board ("SPB"); a qui tam action in the United States District Court for the Eastern District of California; and finally, a civil action in the Sacramento County Superior Court (the instant action, which was removed to this Court).

### A. Plaintiff's SPB Action.

Plaintiff first appealed her termination with the SPB.  Pursuant to Government Code §§ 8547.3 and 19683, Plaintiff also filed a whistleblower retaliation complaint, which she subsequently amended.  Plaintiff named POST, Pecinovksy, Brewer, and Assistant Executive Director Alan Deal as respondents.  The whistleblower complaint was consolidated with the appeal of her termination.

In her amended whistleblower complaint, Plaintiff alleged that she had been assigned to manage and oversee the Violence Against Women Act ("VAWA") grants provided to POST through the California Emergency Management Agency ("CalEMA").  POST accepted the VAWA grant funds to present trainings to law enforcement personnel, and it contracted with RTC to conduct those trainings.

In February 2010, Plaintiff received notice that CalEMA was planning to perform

---

[2] Unless otherwise noted, the following recitation of facts is taken, primarily verbatim, from the parties' papers.  In all material respects, the facts are undisputed.

2

an audit of the VAWA grant the following month, and it sent a list of documents it required for the audit. Plaintiff attempted to obtain this documentation, but RTC refused to provide it. During a meeting with Pecinovsky, Plaintiff expressed that there were serious problems with RTC's management of the grant funds, and it appeared that RTC had claimed reimbursement for expenses which could not be justified or proven. She also told Pecinovsky that POST should not contract with RTC because of these problems.

In March 2010, CalEMA performed its audit, during which Plaintiff disclosed that RTC had failed to produce necessary documents related to its claims for reimbursement and that it did not appear that RTC could justify its claimed expenses. In May 2010, CalEMA issued its findings, which included a conclusion that POST had improperly sought reimbursement for "budget-based" costs rather than actual costs as required. Plaintiff asserts that this finding was the result of her disclosure that RTC had failed to provide the required documentation to justify its invoices. At that point, Plaintiff advised Pecinovsky that she no longer felt comfortable approving RTC's invoices because they were false or inflated. In fact, Plaintiff began to deny RTC's invoices, but Pecinovsky ordered them approved.

Plaintiff alleges that Pecinovsky thereafter began to retaliate against her. Among other things, he transferred her duties related to the VAWA grant (and other contracts with RTC) to Brewer and reassigned Plaintiff to a lesser role. Pecinovsky and Brewer also became hostile toward Plaintiff. Further, Plaintiff's annual evaluation was significantly lower as compared to prior years. She was denied promotions for which she was qualified. Finally, in January 2013, Plaintiff received a counseling memo from Brewer and was escorted out of the building.[3] Plaintiff was terminated in March 2013.[4]

---

[3] Plaintiff offers additional evidence elaborating on more specifics as to Defendant's purportedly retaliatory conduct, but the Court does not go into that detail here because it is unnecessary to decide the instant questions.

[4] According to Plaintiff, Defendants offered the following justifications for her termination: (1) Plaintiff was purportedly involved in a confrontation over a rental car leading to a discrimination complaint being filed against her; and (2) Plaintiff allegedly submitted fraudulent travel reimbursement

Plaintiff contended in her whistleblower complaint that her termination and the events leading up to it were done in retaliation for her reporting to CalEMA regarding RTC's fraudulent invoices.  She specifically identifies POST, Pecinovsky, and Brewer as having subjected her to retaliation.

On or about April 30, 2014, the SPB issued an order sustaining Plaintiff's termination and dismissing her whistleblower complaint.  In dismissing the complaint, the SPB made the following findings: (1) Plaintiff failed to prove that her dismissal from POST was for retaliatory reasons; i.e., in retaliation for any protected disclosures; (2) Plaintiff failed to establish that Brewer subjected her to any adverse action as a result of any protected disclosures; and (3) Plaintiff's claims against Pecinovsky—which were based on events that occurred no later than December 31, 2011—were barred by the statute of limitations contained in Government Code § 8547.8(a) and § 67.2(a) of Title 2 of the California Code of Regulations.

On November 14, 2014, Plaintiff filed a petition for writ of mandate with the Sacramento County Superior Court seeking to overturn the SPB decision.  Plaintiff failed to pursue the matter, and the court dismissed the petition for lack of prosecution on January 7, 2020.

### B.     Plaintiff's Qui Tam Action

On March 19, 2015, Plaintiff initiated a qui tam action in this Court, alleging that RTC violated the federal False Claims Act, 31 U.S.C. § 3729, and California Government Code § 12651.[5]  According to Plaintiff's qui tam complaint, in February 2010, Plaintiff received notice that CalEMA was planning to perform an audit of the VAWA grant in March 2010, and sent a list of documents it required for the audit.  As indicated, however, RTC refused to provide the documentation.  Plaintiff then expressed to

---

claims.  Plaintiff takes the position that the testimony of Executive Director Stresak undermines these claims.

[5] RTC successfully moved to dismiss the claims brought under Government Code section 12651 on the ground that governmental entities are not subject to suit under section 12650 et seq. (United States v. S. California Intergovernmental Training & Dev. Ctr., No. 2:15-cv-00619 MCE CKD, 2017 WL 1495095, at *3 (E.D. Cal. Apr. 26, 2017).)

4

Pecinovsky that there were serious problems with RTC's management of the grant funds, and that it appeared that RTC had claimed reimbursement for expenses which could not be justified or proven. She also told Pecinovsky that POST should not contract with RTC because of these problems.

In March 2010, CalEMA performed its audit, during which Plaintiff disclosed that RTC had failed to produce necessary documents related to its claims for reimbursement, and that it appeared that RTC could not justify its claimed expenses. In May 2010, CalEMA issued its report, which included a finding that POST had improperly sought reimbursement for "budget-based" costs rather than actual costs as required. As with her SPB whistleblower complaint, Plaintiff claims that this finding was the result of her disclosure that RTC had failed to provide the required documentation to justify its invoices. At that point, Plaintiff advised Pecinovsky that she no longer felt comfortable approving RTC's invoices because they were false or inflated. In fact, Plaintiff began to deny RTC's invoices, but RTC went directly to Pecinovsky who overruled her.

After that, Pecinovsky transferred Plaintiff's duties related to grant contracts with RTC to Brewer and reassigned Plaintiff to a lesser role. Plaintiff alleges that she was eventually terminated in March 2013.

Plaintiff asserted that the submission of false invoices by RTC (based on budgeted expenses rather than actual expenditures) violated the federal False Claims Act, 31 U.S.C. § 3729, and California Government Code § 12651. Plaintiff sought monetary recovery as well as punitive damages and attorney's fees and costs.

On or about March 25, 2022, this Court issued its order on motions for summary judgment filed by both Plaintiff and RTC. United States v. S. California Intergovernmental Training & Dev. Ctr., No. 2:15-cv-00619 MCE CKD, 2022 WL 891275 (E.D. Cal. Mar. 25, 2022). In ruling on the cross-motions, this Court found that there was no misrepresentation or concealment on RTC's part (or that of POST) giving rise to fraud (i.e., RTC never made any untrue statement or certification to get its invoices paid). The Court found that POST was aware of the terms contained in the written contract

requiring billing of actual costs, but modified that requirement by accepting budget-billing and paying RTC's invoices accordingly—both RTC and POST understood and agreed that RTC's invoices could be formulated by budget and did not have to reflect actual costs after initially establishing budgeting parameters based on actual costs RTC had incurred for putting on the pertinent VAWA courses. Accordingly, the Court found "no evidence whatsoever" that RTC tried in any way to conceal the fact that it was submitting budget-based billings; that fact was "well-known to both RTC and POST." Id. at *8. In fact, the Court noted that Plaintiff knew that POST was fully aware of this arrangement. Further, the Court held that it was undisputed that once POST requested that RTC submit actual expenses, as opposed to budget-based invoices, beginning on January 1, 2010, RTC complied with that request. Id. at *7.

In light of these findings, Plaintiff resorted to an argument that POST was equally complicit with RTC in allegedly defrauding the federal government. But the Court rejected this argument, concluding that there was simply no misrepresentation or concealment on RTC's part giving rise to fraud. Moreover, it found no evidence that POST solicited, enlisted, or conspired with RTC to violate the terms and conditions of the federal VAWA grants or state sub-grants. Id. at *9 n.13. In fact, the Court found that there was no false claim under 31 U.S.C. § 3729. Id. at *9 n.14.

In sum, the Court held that Plaintiff could not establish the primary essential elements of a claim under the False Claims Act, namely, falsity, scienter, and materiality. The Court denied Plaintiff's motion for summary judgment and granted summary judgment in favor of RTC. Judgment was entered in favor of RTC the same day. Plaintiff filed a motion for reconsideration, which was denied on October 6, 2022.

### C. Plaintiff's Instant Action

In the introduction of the First Amended Complaint ("FAC") in the above captioned case, Plaintiff summarizes her action as follows:

> Plaintiff's claims stem from a clear sequence of events culminating in her unlawful termination. Plaintiff learned of unlawful conduct by CCPOST and some of its contractors,

6

>reported the conduct to the California Emergency Management Agency (CalEMA) and informed her superiors of her communications with the state authorities. One of Plaintiff's larger assignments was overseeing Federal funding for law enforcement training courses with the San Diego Regional Training Center (SDRTC). Plaintiff informed Defendants that there were serious problems with SDRTC's management of the grant funded contract and that SDRTC had claimed reimbursements for expenses which could not be justified or proven.
>
>Defendants proceeded to retaliate against her for making these reports by transferring her assignments, demoting her, providing an unfavorable performance evaluation, denying her rights under the Family Medical Leave Act, ultimately terminating her employment as a Law Enforcement Consultant II, and other adverse employment actions.

FAC, ECF No. 1, ¶¶ 2-3.

More specifically, Plaintiff alleges that in February 2010, she received notice that CalEMA was planning to perform an audit of the VAWA grant in March 2010, and sent a list of documents it required for the audit. Id. at ¶ 15. RTC, however, refused to provide the documentation. Id. at ¶17. Plaintiff then expressed to Pecinovsky that there were serious problems with RTC's management of the grant funds, and it appeared that RTC had claimed reimbursement for expenses which could not be justified or proven. Id. at ¶ 18.

In March 2010, CalEMA performed its audit, during which Plaintiff disclosed that RTC had failed to produce necessary documents related to its claims for reimbursement, and that it did not appear that RTC could justify its claimed expenses. In May 2010, CalEMA issued its report, which included a finding that POST had improperly sought reimbursement for "budget-based" costs rather than actual costs as required. As with her SPB whistleblower and qui tam complaints, Plaintiff claims that this finding resulted from information she had provided to CalEMA regarding RTC's failure to produce support for its invoices. At that point, Plaintiff advised Pecinovsky that she no longer felt comfortable approving RTC's invoices because they were false or inflated. In fact, Plaintiff began to deny RTC's invoices, but RTC went directly to Pecinovsky who overruled her.

7

Plaintiff alleges that she was thereafter subjected to retaliation. Pecinovsky transferred her duties related to grant contracts with RTC to Brewer, and reassigned Plaintiff to a lesser role, which included reviewing legislative mandates. Pecinovsky became hostile toward Plaintiff, her annual evaluation was significantly lower as compared to prior years following her disclosures, and he was denied promotions. Id. at ¶ 37. Finally, in January 2013, Plaintiff received a counseling memo from Brewer and was escorted out of the building. Id. at ¶¶ 44-45. Plaintiff was ultimately terminated in March 2013. Id. at ¶ 47.

Of the seven legal claims contained in the FAC, the first four are for whistleblower retaliation: the first cause of action is for whistleblower retaliation in violation of California Labor Code § 1102.5; the second cause of action is based on retaliation for disclosing false claims in violation of 31 U.S.C. § 3730(h); the third cause of action is based on retaliation for disclosing false claims in violation of Government Code § 12653; and the fourth cause of action is for violation of the Whistleblower Protection Act ("WPA") under Government Code § 8547.8. Plaintiff also asserts a claim under 42 U.S.C. section 1983. In this fifth cause of action, Plaintiff asserts that she was subjected to retaliation in violation of the First Amendment. Defendants now contend Plaintiff's prior pursuit of her SPB and qui tam actions preclude her from pursuing these retaliation claims here.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may

move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

Defendants seek partial summary judgment as to Plaintiff's retaliation claims arguing that she is precluded from pursuing those causes of action due to: (1) the SPB's dismissal of her whistleblower complaint; and (2) resolution of her qui tam action against her. The Court addresses these arguments in turn.

**A.  Dismissal of Plaintiff's SPB complaint precludes her from pursuing her federal retaliation claims.**

State administrative decisions may have preclusive effect in federal court:

> Under 28 U.S.C. § 1738, federal courts are required to give the same preclusive effect to the judgments and records of state courts as they would be given by the state in which they were rendered. Marrese v. American Academy of Orthopedic

10

> Surgeons, 470 U.S. 373, 380 (1985).  While § 1738 does not apply to administrative decisions that have not been reviewed by a court, the Supreme Court, has "fashioned federal common-law rules of preclusion [that apply] in the absence of a governing statute." University of Tennessee v. Elliott, 478 U.S. 788, 794 (1986).  "The rule of federal common law the Court has developed renders the factual determinations resulting from unreviewed state administrative adjudications preclusive in a subsequent judicial proceeding." Guild Wineries & Distilleries v. Whitehall Co., Ltd., 853 F.2d 755, 758 (9th Cir.1988) (citing id. at 3226–27; United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966)).  In addition, the Ninth Circuit "ha[s] held that the federal common law rules of preclusion described in Elliott extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in Utah Construction." Id. at 758–59 (citing 384 U.S. at 422; Eilrich v. Remas, 839 F.2d 630, 632–35 & n. 2 (9th Cir.1988); Plaine v. McCabe, 797 F.2d 713, 719 (9th Cir.1986). The Utah Construction requirements of fairness are that: (1) the administrative agency is acting in a judicial capacity; (2) the administrative agency resolved disputed issues of fact properly before it; and (3) the parties have had an adequate opportunity to litigate. 384 U.S. at 422 (internal citations omitted).

Arcure v. Cal. Dept. of Developmental Services, 2014 WL 346612, at *9 (E.D. Cal. Jan. 30, 2014).  There is no dispute here that SPB decisions generally satisfy those fairness requirements.  Even assuming SPB decisions would typically have preclusive effect, however, Plaintiff argues that retaliation claims are an exception to that rule.  Plaintiff relies primarily on Wabakken v. Cal. Dept. of Corrections and Rehabilitation, 801 F.3d 1143 (9th Cir. 2015) to support her argument.

In Wabakken, the Ninth Circuit determined that SPB proceedings did not have preclusive effect on claims brought under the WPA, California Government Code § 8547. Id. at 1145.  That court reasoned:

> Significantly, under California Supreme Court precedent, "a court may not give preclusive effect to the decision in a prior proceeding if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged." State Bd. of Chiropractic Exam'rs v. Superior Court, 45 Cal.4th 963, 976 (2009) (citations omitted).  We find that Wabakken should not have been collaterally estopped from pursuing his whistleblower retaliation claim in district court.
>
> In State Board of Chiropractic Examiners, a case with a similar

11

> procedural history, the California Supreme Court held that "the Legislature did not intend the State Personnel Board's findings [in a whistleblower retaliation case] to have a preclusive effect against the complaining employee." Id. When the Legislature drafted the California Whistleblower Protection Act it "expressly authorized a damages action in superior court for whistleblower retaliation (§ 8547.8(c)), and in doing so it expressly acknowledged the existence of the parallel administrative remedy" with the State Personnel Board. Id. As a prerequisite to the damages action authorized in § 8547.8(c), the Whistleblower Protection Act requires the filing of a complaint with the State Personnel Board. See Cal. Gov't Code § 8547.8(c) ("[A]ny action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a), and the board has issued, or failed to issue, findings pursuant to Section 19683.").
>
> The employee in State Board of Chiropractic Examiners filed a complaint alleging whistleblower retaliation with the State Personnel Board. 45 Cal.4th at 969. After conducting an investigation the State Personnel Board's executive officer issued a 16–page "Notice of Findings" recommending dismissal of the complaint. Id. Then the employee brought suit in state court under the same whistleblower retaliation theory. Id. at 970. The California Supreme Court held she was not precluded from bringing this claim in court, even though the State Personnel Board decision was not in her favor. Id. at 978.
>
> The California Supreme Court held that § 8547.8(c) "means what it says: An employee complaining of whistleblower retaliation may bring an action for damages in superior court, but only after the employee files a complaint with the State Personnel Board and the board 'has issued, or failed to issue, findings.'" Id. (quoting § 8547.8(c)) (emphasis omitted). Thus, once the State Personnel Board has issued findings, or failed to do so, "the employee may proceed with a damages action in superior court regardless of whether the [State Personnel Board's] findings are favorable or unfavorable to the employee." Id.
>
> "When interpreting state law, federal courts are bound by decisions of the state's highest court." In re Bartoni–Corsi Produce, Inc., 130 F.3d 857, 861 (9th Cir.1997) (quoting Lewis v. Tel. Emps. Credit Union, 87 F.3d 1537, 1545 (9th Cir.1996)). Thus, the California Supreme Court's interpretation of § 8547.8 is binding.

Id. at 1148-49.

It followed then, that the SPB proceedings had no preclusive effect on that

12

plaintiff's WPA claim under § 8457. See id. at 1150 ("California Government Code § 8547, California's Whistleblower Protection Act, as interpreted by the California Supreme Court, provides employees with the ability to file whistleblower retaliation claims in court after filing a complaint with the State Personnel Board, regardless of the favorability of the State Personnel Board's decision to the employee. Thus, State Personnel Board decisions do not have preclusive effect."). Given this clear holding, this Court concludes the SPB proceedings in Plaintiff's instant proceedings do not bar her current WPA claim under § 8547.8.

Nor is Plaintiff precluded from pursuing her claim under Labor Code § 1102.5 or Government Code § 12653. See Bahra v. County of San Bernardino, 945 F.3d 1231 (2019) (concluding that the legislative-intent exception applied so that state administrative findings do not preclude the subsequent bringing of retaliation claims under § 1102.5); Taswell v. Regents of Univ. of Cal., 23 Cal. App. 5th 343, 362 (2018) (same but as to both Labor Code § 1102.5 and Government Code § 12653).[6] Accordingly, to the extent Defendants argue that state law retaliation claims are precluded by the adverse decisions in the SPB proceedings, their Motion is DENIED.

Plaintiff's federal claims present a slightly different question. Neither side specifically addresses whether any exception to the general preclusion rules applies to Plaintiff's federal claims under 31 U.S.C. § 3730(h) or 42 U.S.C. § 1983. The Court declines to undertake such an analysis sua sponte here. There also appears to be no dispute that the SPB proceedings would act as a bar to Plaintiff's federal retaliation claims here absent some exception. Accordingly, the Court concludes that Plaintiff's federal retaliation claims are precluded by the SPB's decision, and GRANTS Defendants' Motion as to her retaliation cause of action under 31 U.S.C. § 3730(h) (Second Cause of Action) and her 42 U.S.C. § 1983 cause of action to the extent is

---

[6] Defendants argue in opposition that the California Supreme Court decision Murray v. Alaska Airlines, 50 Cal. 4th 860 (2010), compels a contrary conclusion. The Ninth Circuit in Bahra, however, expressly considered and distinguished Murray. Bahra is binding on this Court, and it declines Defendants' invitation to attempt to circumvent that decision.

13

based on a retaliation theory (Fifth Cause of Action).

### B. Plaintiff's qui tam action only partially limits Plaintiff's claims in her instant action.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).  Defendants rely on both theories in seeking partial summary judgment here.

#### 1. Claim preclusion

Claim preclusion "applies when: (1) the issues decided in a prior action are identical to the issues in the pending action; (2) the prior action resulted in a final judgment on the merits; and (3) the parties involved in the prior action were either identical to, or in privity with the parties in present action." Del Campo v. Kennedy, 491 F. Supp. 2d 891, 901 (9th Cir. 2006).  To determine whether an identity of claims exists, this Court considers:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Turtle Island Restoration Network v. U.S. Dept. of State, 673 F.3d 914, 917-18 (9th Cir. 2012) (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

Claim preclusion does not act to bar Plaintiff's claims because the qui tam action and this action do not involve infringement of the same rights and would not require production of substantially the same evidence.  In the qui tam suit, Plaintiff was attempting to establish that RTC had knowingly submitted fraudulent claims.  In the instant action, she is not required to establish falsity; it is enough that Plaintiff can show that she made a protected disclosure or that she reasonably believed RTC was engaging in illegal activity.  See, e.g., Cal. Gov't Code § 8547.8 (penalizing those who retaliate against persons for making protected disclosures); Cal. Gov't Code § 8547.2(e)

14

("'Protected disclosure' means a good faith communication, including a communication based on, or when carrying out, job duties, that discloses or demonstrates an intention to disclose information that may evidence (1) an improper governmental activity, or (2) a condition that may significantly threaten the health or safety of employees or the public if the disclosure or intention to disclose was made for the purpose of remedying that condition."); Cal. Lab. Code § 1102.5(b) (prohibiting retaliation when an employee discloses information that the employee has reasonable cause to believe evidences illegal conduct); Kaye v. Bd. of Tr. of San Diego Pub. Law Libr., 179 Cal. App. 4th 48, 60 (2009) (protected disclosure under California's False Claims Act requires showing a reasonably based suspicion of falsity as opposed to an actual false claim). Instead, Plaintiff's allegations here focus on the allegedly retaliatory steps taken by Defendants when Plaintiff engaged in purportedly protected disclosures, facts not before the Court in the qui tam suit. The rights at issue and evidence in this case are thus dramatically different from those litigated previously, and claim preclusion does not apply.

**2.      Issue preclusion**

"Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892. It applies when four conditions are met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." Janjua v. Neufeld, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting Oyeniran v. Holder, 672 F.3d 800, 806 (9th Cir. 2012)). "The elements of issue preclusion are: (1) the issue decided in the prior adjudication is substantially identical to the issue in the subsequent action; (2) there was a final judgment on the merits; and (3) the party against whom the estoppel is asserted was a party to or in privity with a party in the first action." Durkin v. Shea & Gould, 92 F.3d 1510, 1516 (9th Cir. 1996).

15

Defendants have established that preclusion applies as to issues resolved in the qui tam action because that case clearly resulted in a final judgment on the merits, Plaintiff was a party to that suit, and Plaintiff is also the party here Defendants are seeking to estop from relitigating certain arguments. As to what issues should be precluded, Defendants contend that Plaintiff should be estopped from making arguments inconsistent with the following:

> 1. Once POST requested that RTC submit actual expenses, as opposed to budget-based invoices, beginning on January 1, 2010, RTC complied with that request, and RTC made no false or fraudulent claims for payment after that time.
>
> 2. POST was fully aware that RTC had been submitting budget-based invoices for no less than twelve years.
>
> 3. RTC made no misrepresentation or concealment constituting fraud.
>
> 4. POST was not complicit in defrauding the federal government.
>
> 5. Despite the language in the POST annual contracts with RTC, POST believed that it was authorized by its own internal regulations to accept budget-based billings.
>
> 6. RTC did not in any way conceal the fact that it was submitting budget-based billings.
>
> 7. RTC did not knowingly present false invoices.
>
> 8. RTC never made any untrue statement or certification to get its invoices paid.
>
> 9. RTC did not submit budget-based VAWA invoices to POST knowing or recklessly believing that POST believed they were for actual expenditures.
>
> 10. POST knew RTC's invoices were budget-based and that it had paid them on that basis for many years after initially establishing budgeting parameters based on actual costs RTC had incurred for putting on the pertinent VAWA courses.
>
> 11. POST was aware of the terms contained in the written contract but modified that requirement by accepting budget-billing and paying RTC's invoices accordingly.
>
> 12. RTC's did not make any knowing misrepresentations that were "material" to POST's decision to pay its VAWA invoices.
>
> 13. Neither POST nor its employees solicited, enlisted, or

16

>conspired with RTC to violate the terms and conditions of the federal VAWA grants or state sub-grants.
>
>14. There were no false claims within the meaning of 31 U.S.C. § 3729 as it pertains to RTC's invoices to POST.
>
>15. RTC did not violate 31 U.S.C. § 3729 et seq.
>
>16. Neither POST nor its employees violated 31 U.S.C. § 3729 et seq.
>
>17. Plaintiff is not a "whistleblower" within the meaning of 31 U.S.C. § 3729 et seq.

Defs.' Mot., ECF No. 120-1, at 22-23 (citations omitted). The Court agrees at a high level of generality that Plaintiff should be precluded from arguing that RTC engaged in fraud, but it declines to go into the specifics offered by Defendants. This motion crosses into motion in limine territory, and rather than identify specific facts Plaintiff may not contradict, the Court instead holds that Plaintiff may proceed on her remaining retaliation claims only on the theory that she <u>believed</u> in good faith that RTC's conduct was unlawful; she may not proceed on the theory that it was actually fraudulent.

That said, the Court's ruling runs both ways. It will not permit either side to argue to the jury that RTC did or did not engage in fraudulent practices. While Plaintiff cannot proceed here on the theory that RTC's conduct was improper, there is also no reason for Defendants to argue that the conduct was permissible. At base Plaintiff's <u>perception</u> of RTC's actions is relevant; this Court's legal conclusions as to the propriety of those actions is not.

## CONCLUSION

For the reasons just stated, Defendants' Motion for Partial Summary Judgment or (ECF No. 120) is GRANTED in part and DENIED in part, consistent with the foregoing. Not later than thirty days following the electronic filing of this Memorandum and Order, the parties are directed to file a Joint Status Report setting forth the prospect for settlement, their estimated trial length, any request for a jury, and their availability for

17

trial.  To expedite resolution of this matter, the parties are reminded of Local Rule 305(a) and may consent to trial before a magistrate judge.

     IT IS SO ORDERED.

Dated:  November 20, 2023

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE