Lawrance A. Bohm (SBN: 208716)
lbohm@bohmlaw.com
Kelsey K. Ciarimboli (SBN: 302611)
kciarimboli@bohmlaw.com
Andrew L. Thrasher (SBN: 346124)
athrasher@bohmlaw.com
Jack C. Brouwer (SBN: 353351)
jbrouwer@bohmlaw.com
**BOHM LAW GROUP, INC.**
4600 Northgate Blvd., Ste. 210
Sacramento, California 95834
Telephone: 866.920.1292
Facsimile: 916.927.2046
Email: BLG001021@bohmlaw.com

Scott A. Brown (SBN: 177099)
sbrown@bplegalgroup.com
**BROWN | POORE LLP**
2950 Buskirk Avenue, Suite 330
Walnut Creek, California 94597
Telephone: 925.943.1166

Attorneys for Plaintiff,
TAMARA EVANS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA EVANS,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA COMMISSION ON PEACE OFFICERS STANDARDS AND TRAINING; and DOES 1-25, inclusive,<br><br>    Defendant. | Case No.: 2:15-cv-01951-DJC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS**<br><br>Date:      September 18, 2025<br>Time:     1:30 p.m.<br>Courtroom:  7<br><br>Action Filed: June 4, 2014<br>Trial Date: September 3, 2024 |

//

*Sidebar:* BOHM LAW GROUP, INC. / 4600 NORTHGATE BOULEVARD, SUITE 210 / SACRAMENTO, CALIFORNIA 95834

1

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

### TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 6

II.     STATEMENT OF FACTS.................................................................... 7

     A.      Procedural Summary of the Case ..................................................... 7

III.    LEGAL ARGUMENT ........................................................................ 15

     A.      Plaintiff is Entitled to Reasonable Attorneys' Fees as the Prevailing Party. 15

     B.      In California, Attorney's Fees are Determined by the Lodestar Method. ... 16

          1.      The Time Expended by Plaintiff's Counsel was Reasonable................... 18

          2.      The Hourly Rates Sought Are Reasonable................................................ 21

     D.      A 2.0 Multiplier is Entirely Justified in this Action ........................... 23

          1.      Fees for Which Plaintiff's Counsel is Seeking a 2.0 Multiplier ............. 23

          2.      A Multiplier is Warranted Because the Case was Taken on Contingency. ................................................................................. 23

          3.      Plaintiff Achieved a Great Result in a Very Difficult Case Against a Public Employer with Unlimited Resources ........................................ 25

          4.      Delay In Payment Favors A Multiplier ................................................. 27

          5.      Preclusion Of Other Work Favors A Multiplier ..................................... 27

          6.      The Result Obtained Favors A Multiplier .............................................. 28

          7.      Public Policy Favors a Multiplier ......................................................... 28

     E.      Plaintiff's Counsel is Entitled to Compensation for Paralegal/Law Clerk Time. 28

IV.     CONCLUSION.................................................................................... 29

Bᴏʜᴍ Lᴀᴡ Gʀᴏᴜᴘ, Iɴᴄ.
4600 Nᴏʀᴛʜɢᴀᴛᴇ Bᴏᴜʟᴇᴠᴀʀᴅ, Sᴜɪᴛᴇ 210
Sᴀᴄʀᴀᴍᴇɴᴛᴏ, Cᴀʟɪꜰᴏʀɴɪᴀ 95834

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**     BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*     BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

1

# TABLE OF AUTHORITIES

2

## CASES

3    *Bagget v. Gates,* 32 Cal. 3d 128 (1982)..................................................................16

4    *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407 (1991).................................24

5    *Beaty v. BET Holding, Inc*., 222 F. 3d 607 (9th Cir. 2000)....................................17

6    *Caldera v. California Dept. of Corrections and Rehabilitation,*

7        48 Cal. App. 5th 601 (2020).............................................................................21

8    *California Common Cause v. Duffy,* 200 Cal. App. 3d 730 (1987) ...........................18

9    *City of Oakland v. Oakland Raiders,* 203 Cal. App. 3d 78 (1988).............................18

10   *Copeland v. Marshall* 641 F.2d 880 (D.C. Cir. 1980)............................................7

11   *Crommie v. Cal. Pub. Util. Comm 'n.,* 840 F. Supp. 719 (N.D. Cal. 1994) ..............17

12   *Early v. Keystone Rest. Grp*., *LLC,*

13       No. 2:16-CV-00740-DAD-DB, 2024 WL 1886539 (E.D. Cal. Apr. 30, 2024.....................16

14   *Fadhl v. City & County of San Francisco,* 859 F.2d 649 (9th Cir. 1988) ...................18

15   *Fischer v. SJBP.D., Inc.,* 214 F.3d 1115 (9th. Cir. 2000)........................................16

16   *Flannery v. Prentice,* 26 Cal. 4th 572 (2001) .............................................7, 16

17   *Gates v. Gomez,* 60 F. 3d 525 (9th Cir. 1995)..................................................19

18   *Goodman v. Lozano,* 47 Cal. 4th 1327 (2010).................................................16

19   *Guinn v. Dotson,* 23 Cal. App. 4th 262 (1994).................................................28

20   *Hoglund v. Sierra Nevada Mem.-Miners Hosp.,* 102 Cal. App. 5th 56 (2024).........................21

21   *Horsford v. The Bd. Of Trustees of Cal. State Univ.,* 132 Cal. App. 4th 359 (2005)......16, 17, 21

22   *Ketchum v. Moses,* 24 Cal. 4th 1122 (2001)...........................................17, 18, 23, 24

23   *Leuzinger v. County of Lake,* 2009 WL 839056 (N.D. Cal. 2009).............................17

24   *Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470 (9th Cir. 1995).............................16

25   *Margolin v. Regional Planning Comm 'n*, 134 Cal. App. 3d 999 (1982) .....................19

26   *Marshall v. Boeing Co*.,

27       No. 16-cv-08630-DMG-MRW, 2019 WL 4391111 (C.D. Cal. June 10, 2019 ..................15

28   *Missouri v. Jenkins,* 491 U.S. 274 (1989).......................................................21

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**          BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*          BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

*Olson v. Automobile Club of Southern California*, 42 Cal. 4th 1142 (2008) ............................. 24

*Pasternack v. McCullough,* 65 Cal. App. 5th 1050 (2021) ........................................ 22

*Pellegrino v. Robert Half Inernat., Inc.*, 182 Cal. App. 4th 278 (2010).................................... 18

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) ......... 27

*Perkins v. Mobil Hos Bd.,* 847 F. 2d 735 (11th Cir. 1988)........................................ 19

*PLCM Group, Inc. v. Drexler,* 22. Cal. 4th 1084 (2000).......................................... 21

*Press v. Lucky Stores, Inc.,* 34 Cal. 3d 311 (1983)........................................ 17, 23

*Rader v. Thrasher,* 57 Cal. 2d 244 (1962)........................................ 23

*Riordan v. Kempiners,* 831 F. 2d 690 (7th Cir. 1987)........................................ 25

*San Bernardino Valley Audubon Soc. v. County of San Bernardino,*

    155 Cal. App. 3d 738 (1985) ........................................ 18, 21, 24

*Serrano v. Priest,* 20 Cal. 3d 25 (1977) ........................................ 17, 18, 23

*Serrano v. Unruh,* 32 Cal. 3d 621 (1982) ........................................ 7

*State Board of Chiropractic Examiners v. State of California,* 45 Cal.4th 963 (2009).................. 6

*State v. Meyer,* 174 Cal. App. 3d 1061 (1985) ........................................ 28

*Stokus v. Marsh,* 217 Cal. App. 3d 647 (1990)........................................ 18

*Sundance v. Municipal Court,* 192 Cal. App. 3d 268 (1987) ........................................ 17

*Syers Properties III, Inc. v. Rankin,* 226 Cal. App. 4th 691 (2014) ........................ 22

*Thayer v. Wells Fargo Bank,* 92 Cal. App. 4th 819 (2001)........................................ 28

*Vo v. Las Virgenes Muni. Water Dist.,* 79 Cal. App. 4th 440 (2000) .................................. 17, 18

*Wallace v. Consumers Cooperative of Berkeley, Inc.,* 170 Cal. App. 3d 836 (1985) ................. 17

*Wershba v. Apple Computer,* 91 Cal. App. 4th 224 (2001)........................................ 17

*Woodland Hills Residents Assn v. City Council* , 23 Cal. 3d 917 (1979)............................ 18, 29

*Wooldridge v. Marlene Indus. Corp.,* 898 F. 2d 1169  (6th Cir. 1990)..................................... 18

**STATUTES**

California Government Code section 8547.1 ........................................ 6

California Government Code section 8547.8(c) ........................................ 6, 16

//

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**OTHER AUTHORITIES**

Richard Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567 ............................ 23, 24

**RULES**

Federal Rules of Cicvil Procedure 60 ........................................................................... 12

Federal Rules of Civil Procedure 50(b) ....................................................................... 12

Federal Rules of Civil Procedure 59 ....................................................................... 12, 13

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

# I.    INTRODUCTION

The primary intent of the California Whistleblower's Protection Act is to ensure that state employees are free to report waste, fraud, abuse of authority, violations of law, or threats to public health "without fear of retribution." (Cal. Gov't Code § 8547.1.) In adopting the Act, the Legislature expressly found "that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business." (*State Board of Chiropractic Examiners v. State of California,* 45 Cal. 4th 963, 967 (2009).To ensure the critical public policies underlying the CWPA are adequately vindicated through private enforcement actions, the CWPA directly provides for recovery of statutory attorney's fee and enhanced litigation costs. (Cal. Gov't Code § 8547.8(c).)

This case is a textbook example of why reasonable awards of reasonable attorney's fees are necessary to protect whistleblowers like Ms. Evans who report waste, fraud, illegal activity, and abuse of authority within the government. After violating Ms. Evans' rights, POST aggressively litigated this case at every turn for nearly 11 years. Adding insult to injury, Ms. Evans attempted in good faith to resolve this case twice for a reasonable amount several years before trial only for POST to offer **nothing**. Finally, after ten years of hardball litigation and multiple trial continuances and delays, Ms. Evans had her day in court in front of a fair jury and, with the assistance of her legal team, obtained justice. The result was spectacular—an $8.7 million verdict including past and future economic and non-economic awards.[1]

Throughout this entire time, which has spanned more than a decade, Ms. Evans' attorneys have received zero compensation for their work, fighting hard to vindicate Ms. Evans' rights without knowing if they would ever see a nickel for their efforts. Ms. Evans was unable to pay hourly attorney's fees to prosecute her case. Absent her attorney's contingent representation, she would not have been represented. Fortunately, Ms. Evans obtained contingent representation with the expectation that her attorneys would be fully paid for the time they spent and the risk they undertook to achieve a just result. The whole point of the recovery of attorney's fees is to somewhat equalize this clear imbalance.

---

[1] Plaintiff accepted the court's remittitur regarding future economic damages which resulted in a reduced total verdict of $8,308,599.

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**    BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*    BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

1    There is no doubt that 'privately initiated lawsuits are often essential to the effectuation

2    of the fundamental public policies embodied in our constitutional or statutory provision' and

3    ...[w]ithout some mechanism authorizing the award of attorney fees, private actions to enforce

4    such important public policies will as a practical matter frequently be infeasible. (*Flannery v.*

5    *Prentice,* 26 Cal.4th 572, 582-583 (2001).) Further, as the California Supreme Court observed,

6    "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily

7    spent by the plaintiff in response." (*Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621, 638 (1982),

8    citing *Copeland v. Marshall* 641 F.2d 880, 904 (D.C. Cir. 1980).)

9    Now, after prevailing in a long-fought battle, Ms. Evans seeks her attorneys' fees accrued

10    in prosecuting this action to a successful conclusion. The requested lodestar is reasonable and

11    supported by counsel's detailed time records and supporting declarations, including those of

12    attorney fee experts. Plaintiff's lead trial counsel, Lawrance Bohm, is one of the nation's

13    preeminent employment law trial attorneys. Plaintiff therefore respectfully requests a fee

14    consisting of her attorneys' $3,586,916.00 (reasonable hours times reasonable rate) and a 2.0

15    multiplier on certain fees for a total of $6,332,708.00 in attorney's fees. Plaintiff also requests

16    $506,090.00 in paralegal/law clerk costs with some of these costs also subject to the 2.0 multiplier

17    for a total of $877,362.50. The total attorney's fee and costs requested is **$7,210,070.50**.

## II.    STATEMENT OF FACTS

### A.    Procedural Summary of the Case

20    *First Client Contact*: This lawsuit was originally filed in Sacramento County Superior

21    Court on June 4, 2014. After Ms. Evans' initial lawyers announced they were withdrawing their

22    representation, she sought new attorneys. Ms. Evans had a difficult time attempting to find an

23    attorney in the Sacramento area who would take on a government defendant as well as the

24    Attorney General's office. (Evans Decl. ¶4). As such, Ms. Evans looked outside of the

25    Sacramento area to the Bay Area, finding Brown Poore, LLP due to their trial and settlement

26    success against government entities. (*Id.*) Mr. Brown first became aware of Ms. Evans' claims in

27    January 2015. Over the course of several months, Mr. Brown conducted a thorough investigation

28    of Ms. Evans' potential causes of action along with the one claim pled in her initial complaint,

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs          BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*          BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

which could not have survived against a public entity. Mr. Brown also thoroughly analyzed the immense challenges involved in this case. (Brown Decl. ¶16). After a thorough assessment, Mr. Brown decided to accept Ms. Evans' case because (a) Ms. Evans was a credible witness with evidence to support her claims; (b) she had an intriguing story to tell; (c) she had suffered a clear injustice; (d) she had a substantial potential lost wage claim; and (e) the case appeared to be a worthwhile investment of time and resources. (*Id.* at ¶17). Since then, Mr. Brown has represented Ms. Evans for more than 9 years, from the filing of the First Amended Complaint on August 10, 2015, through the present. (*Ibid.*)

*The First Amended Complaint*: Mr. Brown's work in this case started with preparation of a First Amended Complaint. The initial complaint contained just one cause of action for Wrongful Termination in Violation of Public Policy, which is not an available claim to bring against public entities such as POST. Mr. Brown obtained leave to file a First Amended Complaint which included seven new causes of action, including several based on retaliation theories. (*Id.* at ¶19).

*Discovery*: This case required multiple sets of written discovery, production and review of 44,000 documents produced by POST, several discovery disputes resulting in motions to compel, 13 depositions, subpoenas, and hearings to address law and motion issues. (*Id.* at ¶20).

The discovery phase was contentious and there were many battles with the Attorney General's Office. (*Id.* at ¶21). For example, on April 28, 2016, Mr. Brown filed a motion to compel production of the laptop Ms. Evans used during the last few years of her employment. POST's investigator, Anne Brewer, produced the laptop at Ms. Evan's State Personnel Board hearings, so we knew it existed. Defense counsel admitted it had the laptop but relied on untimely objections and refused to produce it. Alternatively, Mr. Brown requested a clone of the hard drive which, his IT consultant advised him, would cost about $500. Defense counsel refused this option as well. Accordingly, after three months of meet and confer attempts, Mr. Brown filed the motion before Magistrate Judge Allison Claire. (*Id.* at ¶22).

The meet and confer process was difficult and not productive. Mr. Brown agreed to submit this discovery matter to an informal conference call with the Court on April 8, 2016. However, Defense counsel refused to provide their portion of the joint letter in a timely manner, forcing Mr.

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1    Brown to submit only his position for the Court's review. When Defense counsel eventually

2    provided their position, they omitted Plaintiff's portion from the "joint letter", resulting in the

3    Court vacating the conference and causing additional delay. Mr. Brown was then required to file

4    the Motion to Compel. (*Id.* at ¶23).

5        Magistrate Judge Claire ordered the AG's office to (a) produce the laptop for inspection;

6    and (b) produce responsive documents identified by Ms. Evans from her laptop contained in 20

7    folders and 12 categories of emails. (See Court's Order, ECF No. 28). Unfortunately, the dispute

8    did not end there as Mr. Brown had to file a motion to enforce Magistrate Claire's court order to

9    compel POST and the Attorney General's Office's compliance. (*Id.* at ¶24).

10        In another discovery dispute, Mr. Brown's office sought an order compelling Anne

11    Brewer to appear for the second day of her deposition. Anne Brewer was Ms. Evans' supervisor,

12    a former individual Defendant, and the workplace investigator who conducted the administrative

13    investigation over a period of several months, which eventually led to Ms. Evans' termination.

14    Ms. Brewer was initially deposed on June 20, 2017, for approximately four and one-half hours.

15    The deposition did not finish, and when Mr. Brown's office sought to schedule the deposition for

16    a second day so that they could use the remaining portion of Ms. Brewer's seven hours to

17    complete the deposition, Defendant's counsel refused. Mr. Brown's office initiated reasonable

18    meet and confer efforts to seek informal resolution and continue the deposition. Defense counsel

19    declined. (*Id.* at ¶25).

20        Therefore, on July 21, 2017, Brown Poore filed a motion to compel the continued

21    deposition of Ms. Brewer before Magistrate Judge Deborah Barnes. After a further meet and

22    confer, the parties reached a compromise on the motion. However, this resolution occurred only

23    after and in response to the filing of the motion to compel. (*Id.* at ¶26).

24        Each party propounded multiple sets of written discovery. Defendant made staggered

25    productions of documents in excess of 44,000 documents. Mr. Brown's office did not have the

26    bandwidth to review all of them. Thus, one of the first things Bohm Law Group did after joining

27    as co-counsel was assigning multiple attorneys, law clerks, and paralegals to identify, organize,

28    summarize, review, and select documents from this immense production as exhibits for trial. This

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

was an onerous task that took many weeks to complete and required an enormous amount of work from these attorneys, law clerks, and paralegals. (*Id.* at ¶27).

*Expert Discovery*: Mr. Brown was directly involved in expert discovery as he interviewed and selected Plaintiff's expert witnesses—Amy Oppenheimer (Human Resources) and Dr. Phil Allman (economist). This included assisting with Rule 26 expert disclosures and preparing the experts for deposition. Mr. Brown also deposed Defendant's experts or designed the approach for their depositions. (*Id.* at ¶28).

*Dispositive Motion Work*: In January 2023, several years after the dispositive motion deadline, POST successfully petitioned the Court to allow it to file a partial motion for summary judgment. POST also requested that discovery be reopened so that it could depose Ms. Evans again. The Court denied the deposition but allowed POST to file its dispositive motion. Because of this unexpected event, Mr. Brown was required to prepare an opposition addressing doctrines of claim and issue preclusion. The Court waited 10 months before issuing an order largely denying Defendant's dispositive motion. Due to this delay, it was extremely difficult to formulate case strategy and prepare for trial. (*Id.* at ¶29).

*Pre-Trial Settlement Negotiations*: Adding insult to injury, Ms. Evans attempted in good faith to resolve this case twice for a reasonable amount several years before trial. Mr. Brown prepared settlement conference statements and attended both conferences with Ms. Evans. On August 10, 2018, Defendant could have settled this case at the Court's Voluntary Dispute Reporting Program before Mediator Scott Plamondon, Esq. Plaintiff made a reasonable, good faith demand. POST did not offer anything. (*Id.* at ¶30).

Mr. Brown and Ms. Evans attended another Settlement Conference on February 24, 2022, before Magistrate Judge Deborah Barnes. POST had a second chance to resolve this case for a sum well under the ultimate jury verdict. Again, Defendant refused to make an offer. Each time, their counsel appeared interested and willing to discuss settlement. However, when Mr. Brown and Ms. Evans appeared for settlement talks there was no good faith interaction by POST. It appeared POST, through their attorneys, was toying with Ms. Evans' emotions and taking a deceitful attitude towards any potential resolution. POST assumed they could profit by wearing

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

10

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**    BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*    BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

down Ms. Evans and Brown Poore. (*Id.* at ¶31).

*Trial Preparation*: On January 18, 2024, after extensive litigation including two unsuccessful settlement conferences, and multiple trial continuances, Mr. Brown associated the Bohm Law Group ("BLG") in as lead trial counsel. (*Id.* at ¶32).

Counsel's preparation for trial was extensive and laborious. It required review, analysis, and mastery of each side's discovery responses, document production (over 40,000 documents to review to ensure all exhibits were included on the exhibit list), deposition transcripts, SPB hearing transcripts, subpoenas, medical records, personnel records, and preparation of witnesses for direct and cross examination. The preparation also required substantial time spent with Ms. Evans to fully understand her employment experience with POST and the basis for her damages. (*Id.* at ¶33).

Plaintiff complied with the Local Rules and Standing Orders by preparing a Trial Brief, Short Statement of the Case, Jury Instructions, Verdict Form, Exhibit List, and Witness List. BLG took the lead on meeting and conferring with Defense counsel on various pre-trial submissions, and ultimately, Plaintiff filed 5 Motions in Limine (all granted at least in part) and responded to and opposed 9 Motions in Limine. (*Id.* at ¶ 34).

Plaintiff's counsel also engaged in substantial preparation of third party or percipient witnesses which included extensive time relocating some of them considering the 10 plus years that had passed since Plaintiff's wrongful termination in 2013. (*Id.* at ¶¶32, 35).

Plaintiff's trial counsel, Bohm Law Group, spent a significant amount of time working to learn the complex set of facts to distill them down for the jury. This involved learning the exhibits, reading and analyzing all depositions and SPB hearing transcripts, meeting and interviewing witnesses, and preparing witness outlines for the upcoming trial. Plaintiff's counsel also fully complied with the Court's Pre-Trial Scheduling Order, which called for the preparation of a Joint Pre-Trial Statement with Opposing counsel. For this Joint Pre-Trial Statement Plaintiff's counsel prepared a witness list, exhibit lists, identified deposition testimony from witnesses that would be presented by video, and a juror questionnaire. (ECF 139) (*Ibid* at ¶32, Bohm Decl. at ¶4).

*Trial*: The trial lasted approximately 4 weeks before the jury rendered Plaintiff's Verdict

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

on September 26, 2024. Plaintiff's counsel prepared jury instructions, jury verdict forms, an opening statement PowerPoint, numerous witness examination outlines, and a closing argument PowerPoint, which took extensive time to create and finalize. In addition, Plaintiff's counsel prepared bench briefs regarding legal issues that arose and worked extensively with Ms. Evans to prepare her for her trial testimony and cross-examination. (*Id.* at ¶36).

The trial was unpredictable and volatile. During trial, defense counsel frequently lodged objections during Plaintiff's examinations and attempted to revisit issues that had already been determined in the Motions in Limine. POST's attorneys mounted an aggressive defense by cross-examining each of Plaintiff's witnesses and calling 6 witnesses in their defense. After Plaintiff's case in chief, POST filed a Motion for Judgment under FRCP 50. The Court denied the motion. The Court also ordered briefing under FRE 804 regarding unavailability of witnesses before finding in Plaintiff's favor. (*Id.* at ¶37).

*The Verdict:* The jury's verdict vindicated Ms. Evans' position entirely, awarding her the full extent of her economic harm and $5.4 million in non-economic damages. The total verdict was $8,763,286.

*Post-Verdict Discussions with the Jury*: Immediately after trial, Mr. Brown spoke with most of the jurors. They congratulated Plaintiff's team on a clear and concise presentation of the evidence. Several of the jurors praised lead trial counsel Mr. Bohm for making their service an entertaining and enjoyable experience. A couple of the jurors volunteered that they looked forward to attending their jury service in the *Evans* trial. (*Id.* at ¶38).

*Post-Trial*: Defendant filed two post-trial motions: (a) Renewed motion for Judgment under FRCP 50(b); and (b) Motion for New Trial under FRCP 59 and 60. Defendant argued in its Rule 50(b) motion that the evidence presented was insufficient for the jury to find that Plaintiff had shown by a preponderance of the evidence (1) that her communication disclosed evidence of improper governmental activity; and (2) that it was a contributing factor in Defendant's decision to take adverse employment action against her. Defendant also contended that it proved by clear and convincing evidence that Ms. Evans would have been terminated anyway for legitimate reasons. The Court disagreed and denied this motion in its entirety. (*Id.* at ¶39).

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**    BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*    BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

POST's Rule 59 Motion for New Trial raised similar issues arguing that the verdict was against the clear weight of the evidence and that the damages awarded were excessive. The Court also denied this motion in part and conditionally denied in part based on Plaintiff accepting a remittitur of $1,111,913 in future economic damages. Plaintiff accepted the remittitur.

On May 15, 2025, the Court issued an Order approving POST's cash bond in the amount of $10,414,429.71. (ECF Doc. No. 273).

*Post-Trial Settlement Discussions*: Mr. Brown had several telephone discussions with POST's counsel, Joseph Wheeler, between December 2024 through April 2025. The topics of these conversations included Plaintiff's acceptance of the remittitur, Defendant's posting of a bond, Plaintiff's motion for attorney's fees, and potential mediation. Although no numbers were exchanged it became clear that POST expected Ms. Evans to settle for substantially less than the amount of her verdict and for her attorneys to take a significant reduction of their earned fees. On June 24, 2025, Mr. Wheeler confirmed this expectation during the 9th Circuit's Settlement Setting Assessment Conference. Accordingly, the assessment conference was not productive and the parties prepared for appellate briefing. (*Id.* at ¶40).

*Current Case Status:* On August 5, 2025, the appellate court granted POST's request for a three-month extension until November 3, 2025, to file an Opening Appellate Brief. Plaintiff's date to respond is December 3, 2025. (*Id.* at ¶41).

## A.    Plaintiff was Represented by Highly Experienced and Skilled Attorneys

Lead trial counsel Lawrance Bohm has been practicing employment law since his bar admittance in 2000. (Bohm Decl. at ¶9.) Mr. Bohm has tried 51 cases through verdict. (*Id.* at ¶3.) Bohm received national attention in 2012 for obtaining a $167 million verdict in *Chopourian v. Catholic Healthcare West.* At the time, the verdict was believed to be the first 9-figure verdict for a single plaintiff in an employment case. (*Id.* at ¶18). In November 2014, Mr. Bohm broke this record-setting verdict in *Juarez v. AutoZone Stores, Inc*., in which he obtained a $185 million award on behalf of a wrongfully terminated employee. (*Id.* at ¶22.) Mr. Bohm has also obtained verdicts of $80.2 million, $11.1 million, $8.7 million, $6.2 million, $3.4 million, and $3 million (*Id.* at ¶¶ 28, 30, 32, 38-39, & 41.) In total, Mr. Bohm has obtained 21 verdicts of at least one

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**     BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*     BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

million dollars. (*Id.* at ¶ 3.) Mr. Bohm has received numerous awards for his trial advocacy, including awards from the Los Angeles Daily Journal and Capital City Trial Lawyers Association. (*Id.* at 45). Mr. Bohm is a frequent speaker on trial advocacy and *voir dire*. (*Ibid.*) As one highly respected employment attorney put it, "Mr. Bohm is at the top of the profession in our field. If I cannot take a case to trial, there are 3 attorneys I recommend to try the case and Mr. Bohm is one of them. To state he is at the elite level of trial lawyer is an understatement." (Ex. I, Rager Decl. at ¶55.) As such, Mr. Bohm seeks an hourly rate of $1,300.

Bohm was assisted in this matter by Kelsey Ciarimboli, who led trial preparation but was unable to second chair because she got married but was able to participate fully in all post-trial aspects. Ms. Ciarimboli "has more trial experience than any attorney I know who has been practicing for the same amount of time." (Ex. U, Sauer Decl. at ¶13.) As another employment attorney put it, "Ms. Ciarimboli also has a wealth of knowledge, skill and expertise on employment law and trial practice given her years of experience with Mr. Bohm. As such, I often rely on Ms. Ciarimboli for expertise and advice on a wide range of employment law and employment trial strategy. Ms. Ciarimboli is well known asset to the plaintiff employment bar as having skill and knowledge well beyond her years in practice." (Ex. Q, Odell Decl. at ¶18.) Another attorney said, "Her knowledge is so robust that I often consult with her for strategic advice." (Ex. L, Grochow Decl. at ¶13.) Ciarimboli seeks an hourly rate of $830.

Bohm Law Group associates Jack Brouwer and Andrew Thrasher also contributed to this case and assisted with the trial. (Bohm Decl. at ¶¶51-52; Ciarimboli Decl. at ¶¶55-56.) Law clerks M. Noah Cowart, Vishal Mohan, Nicole Knauer, and Chidinma Nwokocha, along with some other summer law clerks, assisted with trial preparation, including exhibit/document review and deposition and transcript summarizing. (Ciarimboli Decl. at ¶¶54-56.) Paralegals Jenni Burton, Irina Glukhovskaya, Ashley Gamber, and Michelle Reed along with other staff assisted throughout this case. (Ciarimboli Decl. at ¶¶54-56; Bohm Decl. at ¶¶6, 55, Ex. A.)

Bohm Law Group Appellate Attorney Zane Hilton assisted with post-trial motions in this matter and in the coordinate with Ms. Evans' appellate attorney. Mr. Hilton has practiced appellate law in the employment discrimination space for a decade and has led over 30 "ordinary"

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

---

14

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

appellate matters. Through published opinions, he has successfully changed both California and Federal law on a number of occasions. In addition to his appellate practice, Mr. Hilton has "first-chaired" 4 trials and meaningfully participated in 8 others.

In support of Bohm Law Group's requested rates, Plaintiff submits the expert declaration of Richard M. Pearl, as well as 21 declarations from independent lawyers testifying that BLG's rates are reasonable for the Northern California market in light of their knowledge, experience, and skill. (Bohm Decl. at ¶ 49, Exs. D-X.)

Originating counsel Scott Brown contributed significantly to this case. Mr. Brown has practiced law for more than 30 years and operated his own law firm for more than 20 years. He handled this matter, essentially, by himself for over nine years, aggressively litigating and handling POST's scorched earth defense strategy. Mr. Brown positioned this case for success early in the pleading stage by successfully amending the complaint to include viable causes of action. Mr. Brown acquired critical information during the discovery phase to support Ms. Evans' claims. He also obtained key admissions during his depositions of POST's employees which were introduced during trial. He overcame POST's dispositive motion and represented Ms. Evans during all facets of trial preparation. He brought in experienced trial counsel to ensure Ms. Evans obtained justice. Mr. Brown was integral in designing and drafting Plaintiff's motions in limine and opposing POST's pre-trial motions. He drafted the oppositions to POST's two post-trial motions which were both denied. He continues to be involved in appellate strategy. As such, Mr. Brown seeks an hourly rate of $1,100. In support of his rate, in addition to Mr. Pearl's declaration, Mr. Brown submits a declaration from, Guy Wallace of Schneider Wallace Cottrell Kim LLP, a highly-respected Bay Area public interest attorney who has worked with Mr. Brown and attests that his rate is reasonable given his experience and skill.

### III.    LEGAL ARGUMENT

**A.    Plaintiff is Entitled to Reasonable Attorneys' Fees as the Prevailing Party.**

"When state law authorizes a party to recover fees, a federal court applies state law to calculate the amount of those fees." (*Marshall v. Boeing Co.*, No. 16-cv-08630-DMG-MRW, 2019 WL 4391111, at *1 (C.D. Cal. June 10, 2019) (citing *Mangold v. Cal. Pub. Utils. Comm'n,*

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR                    BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

67 F.3d 1470, 1478 (9th Cir. 1995).) "'[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.'" (*Early v. Keystone Rest. Grp*., LLC, No. 2:16-CV-00740-DAD-DB, 2024 WL 1886539, at *4 (E.D. Cal. Apr. 30, 2024) (citation omitted).)

There can be no dispute here that Plaintiff is entitled to reasonable attorneys' fees and costs. Government Code section 8547.8(c) expressly authorizes the award of reasonable attorneys' fees for prevailing parties. The relevant section of the statute states that "where liability has been established, the injured party shall also be entitled to reasonable attorneys' fees as provided by law ..." Privately initiated lawsuits play an essential role in the effectuation of fundamental public policies embodied in constitutional or statutory provisions. (*Bagget v. Gates,* 32 Cal. 3d 128, 142 (1982)).) Without fee shifting provisions, private actions to enforce these important policies would frequently be infeasible. (*Flannery*, 26 Cal. 4th at 583; *Horsford v. The Bd. of Trustees of Cal. State Univ.,* 132 Cal. App. 4th 359, 394 (2005).)

Here, there is no question that Ms. Evans is the prevailing party. Under California law, a "prevailing party" is one who obtains a "net monetary recovery." (*Goodman v. Lozano,* 47 Cal. 4th 1327, 1330, as modified (Mar. 30, 2010).)

At trial, the jury found in favor of Ms. Evans in the amount of $8,763,286. Following entry of the judgment, POST filed a Motion for a New Trial and Motion for Judgment, arguing the verdict was against the weight of the evidence and excessive. This Court denied both post-trial motions with one condition – that Ms. Evans' agree to a remittitur of her future economic award from $1,566,600 to $1,111,913 or elect a new trial. Ms. Evans accepted the remittitur. Accordingly, on May 14, 2025, this Court entered an amended judgment in the total amount of $8,308,599. Therefore, Plaintiff is the prevailing party and is entitled, as a matter of law, to recover all reasonable attorneys' fees under Government Code section 8547.8(c).

**B.    In California, Attorney's Fees are Determined by the Lodestar Method.**

In California, the fee shifting inquiry begins with the lodestar calculations; that is, the number of hours reasonably expended multiplied by the reasonable hourly rate. (*Horsford,* 132 Cal. App. 4th at 394; *Fischer v. SJBP.D., Inc.,* 214 F.3d 1115, 1119 (9th. Cir. 2000); *see also,*

16

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

*Ketchum v. Moses,* 24 Cal.4th 1122, 1131-32 (2001).) The lodestar is intended to ensure that the successful plaintiff is compensated "for all hours reasonably spent." (*Vo v. Las Virgenes Muni. Water Dist.,* 79 Cal. App. 4th 440, 446 (2000).) Thus, an attorney "*can anticipate receiving full compensation for every hour spent litigating a claim* ..." (*Beaty v. BET Holding, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000).) [Emphasis added.] The expectation of full compensation promotes the policy underlying fee recovery: "[A]n award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." (*Sundance v. Municipal Court,* 192 Cal. App. 3d 268, 273 (1987).)

Although the fee shifting inquiry begins with the lodestar calculation, once the lodestar is determined, it may be adjusted to market value "to fulfill the statutory purpose of bringing 'the financial incentives for attorneys enforcing important constitutional rights...into line with incentives they have to undertake claims for which they are paid on a fee-for-service basis.'" (*Horsford,* 132 Cal. App. 4th at 395; See *Ketchum*, 24 Cal. 4th at 1131-32.)

To do this, courts generally consider (1) contingent risk, (2) exceptional difficulties, (3) delay in payment, (4) preclusion of other work, and the (5) results obtained. (*Id.* at 399-400.) Courts may also consider (6) the importance of the rights vindicated to the client and the public. (*Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 48 (1977); *Wallace v. Consumers Cooperative of Berkeley, Inc.*,170 Cal. App. 3d 836, 849-50 (1985).) A fee award that simply compensates for the lodestar is inadequate because it fails to adjust the fee to the actual "market rate." (*Ketchum*, 23 Cal. 4th 1332-34; *Serrano III,* 20 Cal. 3d 25, 48; *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 321-322. (1983).)

Although enhancements may range from "2 to 4 or even higher" (*Wershba v. Apple Computer*, 91 Cal.App.4th 224, 255 (2001).), Plaintiff's counsel here are requesting only a 2.0 multiplier on certain fees. A 2.0 multiplier is justified given the huge contingent risk, difficulty, preclusion of other work, delay in payment, public interest advanced, and skill displayed in presenting the case. (*See e.g., Leuzinger v. County of Lake,* 2009 WL 839056, *12 (N.D. Cal. 2009) (2.0 multiplier in FEHA case); *Crommie v. Cal. Pub. Util. Comm 'n.*, 840 F.Supp. 719, 726 (N.D. Cal. 1994) (2.0 multiplier in FEHA case); *Fadhl v. City & County of San Francisco,* 859

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR
BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

F.2d 649, 650-651 (9th Cir. 1988) (2.0 multiplier in employment case affirmed); *Pellegrino v. Robert Half Inernat., Inc.*, 182 Cal. App. 4th 278, 291-93 (2010) (1.75 multiplier in employment case affirmed); *City of Oakland v. Oakland Raiders,* 203 Cal. App. 3d 78, 82 (1988) (2.34 multiplier in *noncontingent* case).)

**C.    Plaintiff is Entitled to Full and Fair Compensation for her Attorney's Highly Successful Efforts.**

The ultimate goal of a fee award here is "to encourage suits effectuating a strong [public] policy by awarding substantial attorneys' fees…to those who successfully bring such suits." (*Woodland Hills Residents Assn v. City Council*, 23 Cal. 3d 917, 933 (1979), (quoting *Serrano III*, 20 Cal. 3d at 43); *see also San Bernardino Valley Audubon Soc. v. County of San Bernardino*, 155 Cal.App.3d 738, 755 (1985) (fee award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Vo,* 79 Cal. App. 4th 440.) (Plaintiff's counsel entitled to fair fees and costs in same fashion as other counsel, so they are just as encouraged to litigate).) California courts are required to calculate attorneys' fee awards to provide full compensation for all time reasonably expended in the litigation, including time relating solely to the fee. (*Serrano IV,* 32 Cal.3d at 632-34, 639; *Ketchum*, 24 Cal.4th at 1132-3.)

*1.    The Time Expended by Plaintiff's Counsel was Reasonable*

The first step in the calculation of the lodestar is determining the number of hours reasonably expended. (*See, e.g., California Common Cause v. Duffy*, 200 Cal. App. 3d 730, 753 (1987).) Reasonable hours include, in addition to time spent during litigation, the: (a) time spent before the action is filed, including time reasonably spent interviewing the client, investigating the facts and the law, and preparing the initial pleadings, as well as time spent in exhausting administrative remedies; and (b) time spent in preparing and litigating the fee application. *Stokus v. Marsh*, 217 Cal. App. 3d 647, 655-656 (1990); *Serrano IV,* 32 Cal. 3d at 624.) Reasonable hours may include time spent by more than one attorney on a particular issue or task so long as there is no unreasonable duplication of effort. (*California Common Cause,* 200 Cal. App. 3d at 753.)

The question before the Court is not whether a time expenditure was strictly necessary to obtain the relief achieved, but whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the time the work was performed. (*Wooldridge v. Marlene Indus. Corp.,* 898 F. 2d 1169, 1177 (6th Cir. 1990).) Counsel's "[s]worn testimony that,

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case." (*Perkins v. Mobil Hos Bd,* 847 F. 2d 735, 738 (111th Cir. 1988).)

If a fee application is supported by evidence, the burden shifts to the opposing party to demonstrate that the hours or rates claimed are unreasonable. (*See Gates v. Gomez,* 60 F. 3d 525, 534 (9th Cir. 1995).) To deny compensation, the time claimed must appear "obviously and convincingly excessive under the circumstances." (*Perkins,* 847 F. 2d 735 at 738.) In such cases, some duplication of work is both expected and compensable. (*Margolin v. Regional Planning Comm'n,* 134 Cal. App. 3d 999, 1006-1007 (1982).)

Here, Plaintiff has satisfied her burden by submitting declarations from her attorneys testifying that the time and services provided were reasonable. (Bohm Decl. ¶49; Exs. D-X; Pearl Dec. ¶15.) In addition, Ms. Ciarimboli carefully audited the Time Report to ensure its accuracy. This was a time consuming and laborious process that required her to cross-check the time submissions by the attorneys/staff against the case file, emails, text messages, Teams messages, and internal records. Ms. Ciarimboli deleted entries that were entirely duplicative or redundant when necessary, and purposefully omitted billing entries from multiple individuals. (Ciarimboli Decl. ¶55, Ex. 1). All services performed were reasonably necessary to achieving Ms. Evans' victory and advance her interests. (*Id.* at ¶54.) The following chart sets forth Plaintiff's counsel's hours expended from March 2015 through present. Plaintiff has submitted a detailed worksheet from her attorneys which itemizes the time here. (*Id.* at ¶ 56, Ex 1.)

| Biller | Year Graduated | Hours | Billing Rate | Total |
|---|---|---|---|---|
| Lawrance A. Bohm | 2000 | 1,035.7 | $1,300 | $1,346,410.00 |
| Scott A. Brown | 1995 | 1,385 | $1,100 | $1,523,500.00 |
| Kelsey K. Ciarimboli | 2014 | 402.6 | $830 | $334,158.00 |
| Zane E. Hilton | 2015 | 28.3 | $800 | $22,640.00 |
| Andrew L. Thrasher | 2022 | 338.9 | $470 | $159,283.00 |
| Jack C. Brouwer | 2023 | 446.5 | $450 | $200,925.00 |
| | | | **Total Attorney Lodestar:** | **$3,586,916.00** |

Given that this case is 11 years old, it should not be surprising that counsel expended thousands of hours and required multiple attorneys to assist with this matter; however, their aggregate hours are not duplicative or unreasonable. Each attorney worked on separate parts of projects and handled different aspects of the litigation. Plaintiff's counsel specifically deleted

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

19

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**    BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*    BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

duplicative work and was conservative in recording time by purposefully not billing for multiple individuals who assisted with this matter, including Mr. Brown's law partner who had approximately 200 hours of work on this case. The demands of this case fully justified the number of attorneys and paralegals/law clerks involved. During trial, Plaintiff had four attorneys and two law clerks present the majority of the days, plus three paralegal in the office as support; however, each person handled different items that were necessary and helped in the presentation and preparation for each of the next steps and responses to arguments being made. (Ciarimboli Decl. at ¶55). While Plaintiff's counsel had these individuals all working on trial tasks, Ms. Ciarimboli exercised billing judgment when auditing the time records and only billed for Mr. Bohm's (first chair), Mr. Brouwer's (second chair), and Mr. Brown's (third chair) attorney time for trial attendance. Ms. Ciarimboli also only billed for one law clerk's attendance at trial per day. (Ciarimboli Decl. at ¶¶ 55-57, Ex. 1). Having zealously defended itself, POST can hardly complain that Plaintiff's lawyers complied with their ethical obligation to zealously represent her. The time incurred by Plaintiff's counsel is a direct consequence of litigation decisions made by POST, such as refusing to settle this matter for a reasonable sum at any point in time

Mr. Brown's services included handling nearly all the pre-trial work, including amending the complaint, serving and responding to written discovery, taking and defending depositions, and making and opposing all law and motion work. Mr. Brown was also significantly involved in trial preparation, third chaired this trial, drafted the post-trial motions, and is currently engaged in discussing appellate strategy with Ms. Evans' appellate lawyer. (Brown Decl. at ¶¶18-29, 33-35).

Mr. Bohm's services include being lead trial counsel, which involved conducting all aspects of trial preparation, interviewing and creating witness examination outlines, questioning all witness at trial, designing the trial strategy, conducting *voir dire* and selecting the jury, and doing the opening statements and closing argument. (Bohm Decl. at ¶¶ 60-62).

Ms. Ciarimboli's services included managing and coordinating all trial preparation, assisting with post-trial motions, taking lead on this Motion for Attorney's Fees, and reviewing, compiling, and auditing the Time Report for this matter. (Ciarimboli Decl. at ¶¶ 54-56, Ex. 1).

Mr. Brouwer's services included time spent in all aspects of trial preparation and second chair at trial. As part of his second chair duties, Mr. Brouwer assisted with creating witness examination outlines, selecting the deposition video to be played at trial, organizing and selecting exhibits, assisting with the opening and closing PowerPoints, and putting up exhibits during trial.

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

(Bohm Decl. at ¶51, Bouwer Decl. at ¶10).

Mr. Thrasher's services included time spent assisting in all aspects of trial preparation, including interviewing witnesses and exhibit selection, and assisted with legal briefing of issues that arose during trial. (*Id.* at ¶52, Thrasher Decl. at ¶13).

Mr. Hilton's services included assisting with post-trial motions and appellate strategy. (Hilton Decl. at ¶13).

### 2. *The Hourly Rates Sought Are Reasonable*

Plaintiff's counsel is entitled to be compensated at hourly rates that reflect the reasonable market value of their legal services, based on their experience and expertise. (*Serrano IV,* 32 Cal. 3d at 640-43, n. 31; *San Bernardino Valley Audubon Soc'y, Inc.,* 155 Cal. App. 3d at 755.) "The reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2000).) Payment at full market rates is essential to entice well-qualified counsel to undertake difficult cases such as this one. (*San Bernardino Valley Audubon Soc.,* 155 Cal. App. 3d at 755.) Moreover, the rates to be used in determining the lodestar are those currently charged by counsel, to compensate for the delay in payment resulting from the time it took to litigate the case. (*Missouri v. Jenkins,* 491 U.S. 274, 284 (1989) ("Clearly, compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed."). Counsel's out-of-town rates are properly applied in any case where they are justified. (*Caldera v. California Dept. of Corrections and Rehabilitation,* 48 Cal. App. 5th 601, 606 (2020).) The only requirement is that the plaintiff make "a good faith effort" to seek local counsel, be unable to obtain them, and then retain an outside counsel. (*Horsford,* 132 Cal. App. 4th at 399.) As California case law recognizes, the "trial court is not legally confined to the four corners of the county where the case is tried to determine a reasonable rate." (*Hoglund v. Sierra Nevada Mem.-Miners Hosp.,* 102 Cal. App. 5th 56, 82 (2024); See also *California Open Lands v. Butte County Dept. of Public Works,* (E.D. Cal. No. 2-20-cv-00123-DJC-DMC), Order filed Nov.18, 2024 (Doc 123) at 6-7 (applying San Francisco-based rates to case originating in Butte County).) Here, Plaintiff's counsel are entitled to Bay Area rates due to Ms. Evans' inability to find counsel in the Sacramento area who wanted to take on her case against the state. (Evans Decl. ¶4). As such, Ms. Evans widened her search and found Brown Poore, LLP located in Walnut Creek, who decided to take over the case after Ms. Evans'

21

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

original attorneys withdrew from representation. (*Id.*)

Here, the rates sought by Plaintiff's attorneys are consistent with the frequently cited LSI Laffey Matrix, which is available at http://www.laffeymatrix.com/see.html. (Pearl Dec. ¶33.) The Laffey Matrix is used nationwide as a possible metric for attorney rates. (*See Syers Properties III, Inc. v. Rankin,* 226 Cal. App. 4th 691, 695-96 (2014) (with a locality adjustment).) The Laffey Matrix is a billing matrix that provides billing rates for attorneys at various experience levels in the Washington, D.C. area and can be adjusted to establish comparable billing rates in other areas. (*See Pasternack v. McCullough*, 65 Cal. App. 5th 1050, 1057 fn. 5 (2021).) Under the LSI Laffey Matrix, when adjusted for cost-of-living differentials, the market rate for an attorney with 20-plus years' experience is $1,247. For an attorney with 10 years' experience, the rate is $917.

Furthermore, Mr. Bohm's remarkable career accomplishments justify further upward revision. Fee Expert Richard Pearl opines that, based on the Wolters Kluwer 2024 Real Rates Report, Bohm Law Group's attorneys' skills, experience, and performance qualify them for rates in the Third Quartile range – *i.e.*, the lowest end of rates charged by the top 25% of Bay Area litigators. (Pearl Dec. ¶32.) According to the 2024 Report, the prevailing Third Quartile rate for 166 San Francisco "litigation" partners was **$1,208** per hour. (*Id.*) The prevailing Third Quartile rate for 338 San Francisco partners was **$1,188** per hour. (*Id.*) Thus, the rates Bohm Law Group and Scott Brown request here are well within the range of those rates that are charged by comparably qualified litigators. (*Id.*)

The requested rates of $1,300/hour for Mr. Bohm, $1,100/hour for Mr. Brown, $830/hour for Ms. Ciarimboli, $800/hour for Mr. Hilton, $470/hour for Mr. Thrasher, and $450/hour for Mr. Brouwer are fully in line with the prevailing market rates for attorneys of comparable experience and skill handling similar employment litigation. (*See* Declarations of Supporting Attorneys.) Mr. Bohm is one of the most accomplished and successful employment attorneys in California. As one highly accomplished employment attorney put it, "[Bohm] has a strong national reputation for unparalleled skill and expertise as a plaintiff's trial lawyer. Without a doubt, Lawrance A. Bohm is acknowledged by both sides of the employment bar as one of the best employment trial lawyers in the country." (Ex. G, Whelan Decl., ¶ 19.) The $1,300 rate reflects his stature in the field. The other Bohm Law Group attorneys in this case were each personally trained and supervised by Mr. Bohm. Likewise, Mr. Brown is a highly skilled and knowledgeable trial attorney and his $1,100 rate reflects this. (Ex. A, Wallance Decl. ¶ 18, attached to Brown Decl.)

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

**D.    A 2.0 Multiplier is Entirely Justified in this Action**

Once the court establishes the lodestar amount, it may enhance the fee award by a particular multiplier in order to make an appropriate fee award. (*Serrano III*, 20 Cal.3d 25, 48; *Press*, 34 Cal.3d at 321-322.) A fee award that simply compensates for the lodestar is inadequate because it fails to adjust the fee to the actual "market rate." Plaintiff's counsel asks the Court to apply a multiplier of 2.0 to certain lodestar fees in order to bring attorney fees in line with the market value of the services provided.

*1.    Fees for Which Plaintiff's Counsel is Seeking a 2.0 Multiplier*

In order to be eminently reasonable, Plaintiff's counsel have chosen to only seek a multiplier on certain fees they incurred versus the entire lodestar. Generally, fees that are subjected to this multiplier are categorized into the following categories: 1. Client Communication and Meetings; 2. Preparation of litigation documents, including the complaint, discovery, and law and motion; 3. Preparing for and attending/taking depositions; 4. Preparing for and attending hearings; 5. Trial preparation and attending trial; 6. Post-trial motion work; and 7. Preparing for the appeal. Excluded from the requested multiplier are the following categories: 1. Email communication; 2. Internal conferencing and meetings, even related to trial preparation; 3. Travel time; and 4. Time spent preparing the fee motion and auditing the time. (Ciarimboli Decl. ¶59).

The total lodestar for which Plaintiff is seeking a multiplier on is $2,745,792.00. Thus, applying a 2.0 multiplier on the fees as discussed above brings this to $5,491,584.00, for a total attorney fee award of $6,332,708.00.

*2.    A Multiplier is Warranted Because the Case was Taken on Contingency.*

The risk assumed by Plaintiff's contingent fee counsel was extraordinarily high. As the Supreme Court explained in *Rader v. Thrasher*, 57 Cal. 2d 244, 253, (1962) "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." Fee enhancement in contingency cases is intended to compensate the attorney "not only for the legal services he renders but for the loan of those services. **The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.**" (*Ketchum*, 24 Cal. 4th at 1132-3, citing Richard Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567 (emphasis added).) Put another way, a lawyer who undertakes a matter upon contingency is loaning his services to his client, and it is a uniquely

23

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

risky loan. Loans accrue interest, and riskier loans have higher interest rates. Recognizing the risks incurred by attorneys accepting cases on a contingency basis, California courts have routinely applied a contingent risk multiplier in order to attract attorneys to cases of significant societal importance and compensate for the risk of loss generally present in contingency cases as a class. (*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1419 (1991), disapproved on other grounds by *Olson v. Automobile Club of Southern California*, 42 Cal. 4th 1142 (2008).) The contingent risk multiplier is used in order to set a fee that is "likely to entice competent counsel to undertake difficult public interest cases." (*San Bernardino Valley Audubon Soc.*, 155 Cal. App. 3d at 755.) This brings the financial incentive for attorneys enforcing important rights into line with incentives they would have to take cases for which they would be paid on a fee-for-service basis. (*See Ketchum*, 24 Cal. 4th at 1132-33 (citing Posner, Economic Analysis of Law (4th ed. 1992), pp. 534, 567).) California wants the legal system of be a fair playing field so that the rights of the aggrieved can be fairly adjudicated—particularly where an important public interest is at stake. Thus, it is the public policy of California to incentivize lawyers to undertake these cases by multiplying lodestar amounts.

Plaintiff's attorneys worked on a contingency fee basis for the last 11 years without any compensation. They advanced more than $50,000 to prosecute Plaintiff's claims. (Bohm Decl. at ¶46.) This is capital that was tied up for years. Plaintiff has submitted declarations from 21 independent attorneys discussing the difficulties and risk inherent in running a contingency fee practice. Contingency fee attorneys must navigate a gauntlet to get paid: survive challenges to the pleadings; obtain necessary evidence in discovery; protect the client from intrusive and unreasonable discovery; survive an MSJ; oppose motions in limine; prevail at trial; and then defeat post-trial motions. Contingency fee attorneys face exponentially more risk traditionally than hourly attorneys working on a replenishable retainer. This factor strongly weighs in favor of a higher multiplier.

Many firms, in evaluating cases taken on a contingent basis, calculate that the fee (if the case is successful) should generate at least double the rates they would charge to paying clients. If the expected fee falls short of that mark, many firms would be disinclined to accept the risk of loss. Setting the fee to reflect the risk of loss makes contingent risk cases competitive in the legal marketplace and is necessary to ensure that meritorious cases will be brought to enforce important legislation. Without accounting for contingent risk, plaintiffs seeking to enforce important

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

employment, civil rights, constitutional and environmental statutes would face substantial difficulty in obtaining counsel. (Bohm Decl. ¶47.)

It is extremely difficult to run a contingency fee practice. Cases frequently take three or more years to settle—longer for trial, even longer against a public entity. Then even longer if there is an appeal. In addition to the customary expenses of running a consumer-oriented law practice - office rent, utilities, staff, research services, marketing, insurance, etc. - contingency fee lawyers must advance tens to hundreds of thousands of dollars on behalf of their clients for litigation costs. Because a contingency fee law practice is so capital intensive—and the income stream is so sporadic and unpredictable—the only way contingency attorneys can stay in business is to carry substantially heavier caseloads than their counterparts who represent employers and insurance companies. The COVID Pandemic was especially hard on contingency fee lawyers because it created backlog the delayed trials, in some cases by two years or more, and creating cash flow and staffing issues. (Ex. R, Foley Decl. ¶12; Ex. I, Rager Decl. ¶51; Ex. D, Romero Decl. ¶9; Ex. O, Quigley Decl. ¶17.)

3.  *Plaintiff Achieved a Great Result in a Very Difficult Case Against a Public Employer with Unlimited Resources*

In another context, Judge Posner—one of the most esteemed jurists of our time—explained how employment cases are inherently difficult for plaintiffs: "Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible." (*Riordan v. Kempiners,* 831 F. 2d 690, 697 (7th Cir. 1987).)

Cases against public entities are significantly more complex and challenging than litigating against private businesses. This is due to a number of institutional, procedural, and practical factors unique to the public sector. First, plaintiffs must comply with rigid pre-litigation requirements under the Government Claims Act and, in many instances, additional regulations such as whistleblower protection statutes. These frameworks impose strict deadlines and administrative exhaustion mandates that can bar otherwise meritorious claims if not perfectly followed. Second, public entities lack the same financial incentive to resolve cases early or efficiently because they are typically represented by salaried in-house counsel or contracted attorneys whose fees are not outcome-driven. Third, most government entities are self-insured,

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

meaning they do not have private adjusters evaluating claims, assessing exposure, or applying external pressure to settle—further decreasing the likelihood of early resolution. Fourth, because the government pays its attorneys regardless of caseload or litigation outcome, and is often exempt from certain litigation related costs, there is a notable lack of cost sensitivity that undermines the efficiency and resolution incentives that typically influence private defendants. Fifth, governmental counsel are often less responsive or available than private counsel, due to large caseloads, bureaucratic constraints, or extended absences such as vacations or leaves, which private practitioners typically cannot afford. This unavailability often results in delays that would be unacceptable in private litigation. Sixth, discovery is often drawn out and inconsistent due to the same lack of fiscal motivation and practical urgency. Seventh, public entities benefit from broad statutory immunities—such as discretionary act immunity, design immunity, and others— that limit the scope of viable claims and increase the burden on plaintiffs. Eighth, damages are significantly constrained, as punitive damages are not recoverable against government defendants, and certain other categories of damages may be statutorily limited. Ninth, and most significantly, obtaining a favorable jury verdict against a public entity is more difficult because jurors, as taxpayers, may be reluctant to award damages that they perceive as coming from public funds— raising the effective bar for proving liability and justifying damages. Finally, public entities frequently pursue appeals with minimal budgetary concern, leveraging their institutional resources to extend litigation and challenge unfavorable rulings. Taken together, these factors make litigation against government entities considerably more difficult, time-consuming, and resource-intensive than litigation against private actors. (Ex. N, Bourn Decl. ¶19.) As a result, some employment lawyers refuse to take public entity cases. (Ex. R, Foley Decl. ¶¶11, 18; Ex. I, Rager Decl. ¶¶51-52; Ex. D, Romero Decl. ¶¶9-10; Ex. O, Quigley Decl. ¶18).

In addition, this case presented major factual and legal challenges. Liability was not certain at the outset of this matter. All employment retaliation cases tend to be extremely complex and fact intensive. As a result, voluminous discovery was required—13 depositions were taken and over 800 exhibits were initially identified by the parties from a stack of more than 44,000 documents. This case involved conduct between the parties which began when Plaintiff began her employment in 2004 and ended in 2013 with her termination.

While Plaintiff's counsel believed the evidence was clear that POST was motivated by Ms. Evans' complaints regarding POST's approval of wasteful billing practices when they

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

decided to terminate her employment, jury trials are always difficult, and this case was no exception. (Bohm Decl. ¶¶60-61.) This case was proved almost entirely by circumstantial evidence. (*Id.*) Mr. Bohm had to catch several sophisticated witnesses in contradictions and untruths. (*Id.*) This is a task that a less experienced lawyer might have botched. (*Id.*) Further, the trial in this matter did not commence until nearly 10 years after Ms. Evans' termination, causing Plaintiff's counsel difficulty in tracking down witnesses. (*Id.*) This extensive delay compounded the difficulty of an already complex case—memories fade, witnesses move on. (*Id.*) Mr. Bohm systematically dismantled POST's proffered reasons for termination, and the preposterous notion Ms. Evans had made discriminatory and derogatory remarks to an Enterprise car rental representative and Ms. Brewer's investigation was unbiased and thorough – claims which he debunked entirely. (*Id.*) Instead, Mr. Bohm made it abundantly clear that the real reason for the decision to terminate Ms. Evans was her report of illegal activity and POST created a pretext to terminate her employment. (*Id.*)

Following trial, the parties attempted to engage in settlement negotiations which went nowhere. (Bohm Decl. at ¶62.) POST filed post-trial motions that advanced two arguments which were borderline meritless, which this Court denied. (*Id.*) Nevertheless, POST is expected to persist with an appeal on these same arguments.

### 4.    Delay In Payment Favors A Multiplier

Delay in payment causes cash-flow problems and deprives attorneys of the use of money, thus magnifying the economic risks associated with the uncertainty of payment. (*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 750 (1987).) Plaintiff's counsel began its involvement in the present case in March 2024. (Bohm Decl. ¶4, Brown Decl. ¶32.) By the time this motion is heard, this case will be over 11 years old. Even at current rates, the heavy burden on counsel created by this long delay favors a multiplier.

### 5.    Preclusion Of Other Work Favors A Multiplier

Suffice to say, the time that Plaintiff's attorneys put into this case is time that could have been spent helping other wronged employees. The countless hours, consisting of over eleven years, meant counsel had to turn away other cases and work. Mr. Brown's firm was forced to turn away approximately 5-6 potential cases they otherwise would have accepted due to the litigation of this case and delays in getting it to trial. (Brown Decl. ¶46). Additionally, trial is exceptionally time-consuming and laborious. This factor strongly favors a multiplier.

27

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs     BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*     BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

6. *The Result Obtained Favors A Multiplier*

The "results obtained" factor can properly be used to enhance a lodestar calculation where an exceptional effort produces an exceptional benefit. (*Thayer v. Wells Fargo Bank,* 92 Cal. App. 4th 819, 838 (2001).) Plaintiff's attorneys were able to overcome an insurmountable hurdle in order to achieve justice for their client. They survived a late filed summary judgment motion and proceeded to a jury trial where it was an uphill battle to prevail, obtaining Ms. Evans full compensation for the economic harm POST caused in addition to over $5 million in non-economic harm. (ECF 281-1.) This was a remarkable victory and recognized as one of the top 10 Labor & Employment Verdicts in California in 2024. (See https://topverdict.com/lists/2024/california/top-10-labor-employment-verdicts.)

7. *Public Policy Favors a Multiplier*

The public interests advanced by the case can also justify an enhancement to the lodestar. (*See, e.g.*, *State v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985).) As discussed in the introduction, anti-retaliation whistleblowing laws are essential to encourage workers to blow the whistle when their employers or the government break the law. Whistleblowing encourages employers to self-correct their behavior. But if whistleblowers are unable to obtain counsel after they have suffered retaliation, then unscrupulous employers face no consequences for their unlawful acts. Our employment laws rely almost entirely on private enforcement by private lawyers. While there are government agencies to enforce some (but not all) employment laws, they tend to be underfunded and overworked. The average consumer cannot afford an attorney, as was the case for Ms. Evans. Contingency fee attorneys are therefore critical to enforcing some of our most important laws. Fair attorney fee awards are critical to encouraging attorneys to incur the considerable risk of enforcing employment and civil rights laws. (Ex. R, Foley Decl. ¶14; Ex. I, Rager Decl. ¶52; Ex. D, Romero Decl. ¶10; Ex. O, Decl. ¶18.) A multiplier in this case will vindicate public policy.

**E.    Plaintiff's Counsel is Entitled to Compensation for Paralegal/Law Clerk Time.**

Paralegal time is compensable on a statutory fee motion. (*Guinn v. Dotson*, 23 Cal. App. 4th 262, 271 (1994).) (trial court abused discretion by refusing to award paralegal time in statutory fee award).) The term "reasonable attorney's fees" includes paralegal time. "[A]wards of attorney's fees for paralegal time have become commonplace in California and are appropriate[.]" (*Id.*)

Here, Plaintiff's counsel efficiently used paralegal professionals and law clerks. The

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs                BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*                                BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

market rate for these services is $275 per hour for senior paralegals, and $300 for law clerks, $325 for Senior Staff Law Clerks, and $350 for BLG Assistant Vice President of Legal Operations. (Bohm Decl. ¶5.) The paralegal staff and law clerks in this case assisted with case inception, all filings, discovery, preparation of legal documents, all trial documents, trial preparation, the compilations of costs, and the motion for attorney's fees. (*Id.*) All time expended and charged by counsel for paralegal staff and law clerk was reasonable. (*Id.*) Plaintiff was also conservative in recording time for paralegals and law clerks, excluding many that worked and helped out in this case. (Ciarimboli Decl. ¶¶55-57, Ex. 1). This case has been going on for so long that Ms. Ciarimboli worked on it while waiting on her bar results and Mr. Hilton worked on it during his summer clerkship. (*Id.*) The total paralegal and law clerk expenses of $506,090 ($877,362.50 with the 2.0 multiplier on certain time) based upon service time of 1,673.20 hours expended in this matter, are included in **Ex. 1** to Ms. Ciarimboli's Declaration and summarized as follows:

| Paralegal/ Law Clerk Time | Hours | Billing Rate | Total |
|---|---|---|---|
| Jenni Burton | 222.6 | $350 | $77,910.00 |
| M. Noah Cowart | 297 | $325 | $96,525.00 |
| Sara R. Benton | 279.8 | $300 | $83,940.00 |
| Chidinma G. Nwokocha | 127.7 | $300 | $38,310.00 |
| Vishal Mohan | 280.0 | $300 | $84,000.00 |
| Nicole Knauer | 94.3 | $300 | $28,290.00 |
| Irina Glukhovskaya | 269.2 | $275 | $74,030.00 |
| Ashley Gamber | 90.3 | $225 | $20,317.50 |
| Michelle Reed | 12.3 | $225 | $2,767.50 |
| **Total Paralegal/Law Clerk Lodestar:** | | | **$506,090.00** |
| **With Select Fees Subject to 2.0 Multiplier:** | | | **$877,362.50** |

## IV.  CONCLUSION

The ultimate goal of attorney's fee provisions is "to encourage suits effectuating a strong [public] policy by awarding substantial attorneys' fees … to those who successfully bring such suits." (*Woodland Hills Residents Assn.,* 23 Cal.3d at 933.) By vindicating Plaintiff's rights in this action, Plaintiff's attorneys performed exactly that function and are entitled to full compensation. Plaintiff respectfully requests that this Court order POST to pay Plaintiff's counsel $3,586,916.00 in attorney's fees and a 2.0 multiplier on certain fees for a total of $6,332,708.00 in attorney's fees, plus $506,090.00 in paralegal/law clerk costs with some of these costs also subject to the 2.0 multiplier for a total of $877,362.50, bringing the total attorney's fee and costs award to

29

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
BROWN | POORE LLP

**$7,210,070.50**.


Date: August 15, 2025                                  By: _____
                                                           LAWRANCE A. BOHM, ESQ.
                                                           KELSEY K. CIARIMBOLI, ESQ.
                                                           ANDREW L. THRASHER, ESQ.
                                                           JACK C. BROUWER, ESQ.
                                                           SCOTT A. BROWN, ESQ.

                                                           Attorneys for Plaintiff,
                                                           TAMARA EVANS

**Plaintiff's MPA iso Plaintiff's Application for Reasonable Atty Fees & Costs**     BOHM LAW GROUP, INC.
*Evans v. CA Commission on Peace Officers Standards & Training, et al.*     BROWN | POORE LLP
Case No.: 2:15-cv-01951-DJC-SCR

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834